Stephen F. Willig, Esq.
D'AMATO & LYNCH, LLP
225 Liberty Street, 30th Floor
New York, NY 10281
Phone: 212-269-0927

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ X | |
| LANDMARK AMERICAN INSURANCE COMPANY, : | **Civil Action No.** |
| Plaintiff, : | |
| : | **HON.** |
| -against- : | |
| : | |
| DENTAL SLEEP MASTERS, LLC, INTERNATIONAL : | **COMPLAINT** |
| ACADEMY OF SLEEP, LLC, AVI WEISFOGEL, : | |
| BARRY GLASSMAN, REBECCA PASTOR, : | |
| REBECCA LAUK, DDS, SAL ARAGONA, DDS, JAY : | |
| NEUHAUS, DDS and ANTHONY BENNARDO, DDS, : | |
| : | |
| Defendants. : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ X | |

Plaintiff Landmark American Insurance Company ("Landmark"), by and through its undersigned attorneys, by way of complaint against Dental Sleep Masters, International Academy of Sleep, Avi Weisfogel, Barry Glassman, Rebecca Pastor, Rebecca Lauk, DDS, Sal Aragona, DDS, Jay Neuhaus, DDS and Anthony Bennardo, DDS (collectively, "Defendants"), asserts as follows:

1.     Pursuant to Local Rule 10.1(a), the street and post office address of each named party to this case is as follows:

    a.  Landmark American Insurance Company
       946 East Paces Ferry Road, Suite 1800
       Atlanta, Georgia 30226

    b.  Dental Sleep Masters, LLC (DSM, LLC)
       c/o AJ Santye & Co.
       36 East Main Street

Somerville, NJ 08876

   c.  International Academy of Sleep (IAOS, LLC)
c/o AJ Santye & Co.
36 East Main Street
Somerville, NJ 08876

   d.  Avi Weisfogel
Founder of DSM/PES
Director IAOS
2400 Morris Avenue, Suite 202
Union, NJ 07083

   e.  Barry Glassman
1329 Hamilton Street
Allentown, PA 18102

   f.  Rebecca Pastor
206 Montrose Avenue
South Orange, NJ 07079

   g.  Rebecca Lauk, DDS
1675 Keller Parkway
Keller, TX 76248

   h.  Sal Aragona, DDS
37020 Garfield Road
Charter Township of Clinton, MI 48036

   i.  Jay Neuhaus, DDS
110 E. 40th Street, Suite 406
New York, NY 10016

   j.  Anthony Bennardo, DDS
87 S. McLean Blvd
South Elgin, IL 60177

2.    Landmark seeks rescission of Professional Liability Policy Number LHM763897

("the Landmark Policy") issued by Landmark to International Academy of Sleep/Dental Sleep

Masters/BGAW Management; a declaration that the Landmark Policy is void *ab initio*; and an

award of damages as the result of fraud in the application process. In the alternative, Landmark

seeks a determination of the respective rights and obligations of the parties under the Landmark

Policy with respect to two underlying actions against the Defendants, and a Declaration that

Landmark has no obligation to defend or indemnify any of the Defendants, in whole or in part, with respect to such actions.

## THE PARTIES

3.      Landmark American Insurance Company ("Landmark") is a company incorporated under the laws of the State of Oklahoma, with its principal place of business in Atlanta, Georgia 30326-1160, and is, therefore, a citizen of Oklahoma and Georgia for diversity purposes.

4.      On information and belief, Defendant Dental Sleep Masters, LLC ("DSM") is an inactive Florida Limited Liability Company with a registered address of 2875 N. Highway A1a, Indialantic, Florida 32903, which was doing business in the State of New Jersey with a principal place of business in New Jersey.

5.      On information and belief, Defendant International Academy of Sleep, LLC, ("IAOS") is a New Jersey Limited Liability Company with a registered address of c/o AJ Santye & Co., 36 East Main Street, Somerville, NJ 08876.

6.      On information and belief, Defendant Avi Weisfogel ("Weisfogel") is a citizen of the State of New Jersey who maintains a residence at 2400 Morris Avenue, Suite 202, Union, NJ 07083, and the owner of IAOS/DSM/BGAW Management.

7.      On information and belief, Defendant Barry Glassman ("Glassman") is a citizen of the Commonwealth of Pennsylvania who maintains a residence at 1329 Hamilton Street, Allentown, PA 18102.

8.      On information and belief, the named insured on the Landmark Policy at issue, International   Academy   of   Sleep/Dental   Sleep   Masters/BGAW   Management ("IOAS/DSM/BGAW"), is a combination of Defendants IAOS, DSM, Glassman and Weisfogel but is itself not a separate legal entity.

9.      On information and belief, Defendant Rebecca Pastor ("Pastor") is a citizen of the State of New Jersey who maintains a residence at 206 Montrose Avenue, South Orange, NJ 07079.

10.     On information and belief, Defendant Rebecca Lauk, DDS ("Lauk") is a citizen of the State of Texas who maintains a residence at 1675 Keller Parkway, Keller, Texas 76248.

11.     On information and belief, Defendant Sal Aragona, DDS ("Aragona") is a citizen of the State of Missouri who maintains a residence at 37020 Garfield Road, Charter Township of Clinton, MI 48036.

12.     On information and belief, Defendant Jay Neuhaus, DDS("Neuhaus") is a citizen of the State of New York who maintains a residence at 110 E. 40th Street, New York, NY 10016.

13.     On information and belief, Defendant Anthony Bennardo, DDS ("Bennardo") is a citizen of the State of Illinois who maintains a residence at 87 S. McLean Blvd, South Elgin, IL 60177.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in the Court as there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. *See* 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the acts or omissions giving rise to the dispute occurred.

## THE LANDMARK APPLICATION AND POLICY

16.     On May 27, 2017, Weisfogel, as owner of IOAS/DSM/BGAW, completed and signed an APPLICATION FOR MISCELLANEOUS MEDICAL LIABILITY INSURANCE

4

(the "Landmark Application") in conjunction with seeking professional liability insurance coverage from Landmark. A copy of the Landmark Application is annexed hereto as Exhibit A.

17.     Weisfogel, acted on behalf of IOAS/DSM/BGAW, himself and all insureds, including Glassman and the other Defendants (to the extent they are determined to be "covered persons" under the Landmark Policy) in completing the Landmark Application.

18.     In reliance upon the completed Landmark Application, Landmark issued the Landmark Policy Number LHM763892, with a policy period of June 1, 2017, to June 1, 2018, to IOAS/DSM/BGAW.  A copy of the Landmark Policy is annexed as Exhibit B.

## COUNT I- RESCISSION

19.     Landmark incorporates by reference the allegations set forth in paragraphs 1 through 18  above as though each were set forth at length herein

20.     When completing the Landmark Application, Weisfogel, knowingly concealed relevant and material information, and provided false and incomplete information to Landmark, in order to induce Landmark to issue the Landmark Policy to Defendants.

21.     Weisfogel provided answers to Question 10a and 10c of the Landmark Application as follows:

> 10. a.  List the number and type of applicant's employees and volunteers:
>       If None, State None        1
>     b. List the number of independent contractors who provide services on behalf of the applicant.        none
>     c.  Are all the above individuals licensed in accordance with applicable state and federal regulations?
>                                    Yes ☒   No ☐

22.     Weisfogel answered "Yes" to Question 10c.

23.     Question 10c asked further whether with regard to "'YES' ANSWERS" if the applicant or any of the above employees have:

1) Ever been the subject of disciplinary or investigative proceedings or reprimand by a governmental or administrative agency, hospital or professional association?

2) Ever been convicted for an act committed in violation of any law or ordinance other than traffic offenses?

3) Ever been treated for alcoholism or drug addiction?

4) Ever had any state professional license or license to prescribe or dispense narcotics refused, suspended, revoked, renewal refused or accepted only on special terms or ever voluntarily surrendered same?

24. Weisfogel answered "No" to each of the questions referenced in Paragraph 23. above.

25. At the time Weisfogel completed the Landmark Application, he had been investigated by the New Jersey State Board of Dentistry (the "Dentistry Board"). On November 11, 2014 Weisfogel entered into a Consent Order with the Dentistry Board pursuant to which Weisfogel's retirement of his license to practice dentistry was deemed a revocation of licensure effective November 13, 2014 (the "Consent Order").

26. The Consent Order states:

This matter was first opened to the State Board of Dentistry ("Board") upon receipt of complaints from certain of Dr. Weisfogel's patients with regard to the care rendered by Dr. Weisfogel. The Board commenced an investigation pursuant to which the doctor voluntarily underwent an assessment of skills through the Dental Professional Review and Evaluation Program (D-PREP). The Board has also received and reviewed a Data Bank report reflecting a settlement paid on behalf of Dr. Weisfogel in the amount of $400,000 to patient G.S. The Board finds that Dr. Weisfogel's patient care provided a basis for disciplinary action. Additionally, the report of the D-PREP evaluation gives rise to serious concerns. Dr. Weisfogel neither admits nor denies the Board's findings and has indicated his desire to permanently retire from the practice of dentistry.

27.     The Consent Order stated further that it is agreed that, "the license issued to Dr. Avi Weisfogel, D.M.D. to engage in the practice of Dentistry in the State of New Jersey is hereby permanently retired to be deemed a revocation of licensure."

28.     In addition, at the time Weisfogel completed the Landmark Application, the Department of Justice had issued a Drug Enforcement Administration Order dated March 30, 2016 ("DEA Order"), pursuant to which the DEA Acting Administrator ordered that the Certificate of Registration issued to Weisfogel, by which he was authorized to dispense controlled substances as a practitioner, be revoked.

29.     This DEA Order cited a November 2, 2015 Order to Show Cause issued to Weisfogel by the Office of Diversion Control, Drug Enforcement Administration (DEA). The Order to Show Cause cited the revocation of Mr. Weisfogel's license to practice.

30.     By failing to disclose the Consent Order and Order to Show Cause and instead answering Question 10c in the negative, Weisfogel made a knowing misrepresentation of facts material to Landmark's consideration of the Landmark Application.

31.     At the time Weisfogel on behalf of IOAS/DSM/BGAW signed the Landmark Application on May 27, 2017, he had been subject to multiple disciplinary or investigative proceedings or reprimand by a governmental or administrative agency, hospital or professional association.

32.     At the time Weisfogel on behalf of IOAS/DSM/BGAW signed the Landmark Application on May 27, 2017, he had had a state professional license refused, suspended, revoked or voluntarily suspended.

33.     By failing to disclose the existence of these disciplinary complaints and/or grievances in response to Question 10c of the Application, and instead answering Question 10c

in the negative, Weisfogel, on behalf of IOAS/DSM/BGAW made a knowing misrepresentation of facts material to Landmark's consideration of the Landmark Application.

34.     Question 28 on the Landmark Application asked as follows:

.     Has any claim ever been made against the applicant or any persons named in question 1

Yes ☒   No ☐:

If yes, how many?                        1

35.     Based upon information and belief the claim referenced in this response is the *Polit v. Zyppah* lawsuit (No. 3910 of 2017 ) filed in Pennsylvania state court (Court of Common Pleas, Luzerne County) which named Weisfogel and Glassman as defendants in connection with their involvement in a company called Zyppah, Inc.

36.     Question 29 on the application asked:

Is the applicant aware of any circumstances which may result in any claim against the applicant or any persons named in question 1?

Yes ☐   No☒

If yes, how many?             _____

37.     IOAS/DSM/BGAW, through its agent Weisfogel and on behalf of all Defendants, also knowingly provided a false answer to Questions 28 and 29 as pleadings filed in a lawsuit entitled *Nick Nguyen et al. v. Dental Sleep Masters. LLC et al.* filed in the United States District Court for the Central District of California (Docket Number 8:17-cv-00732) (the "Nguyen Action") allege that on September 19, 2016, Plaintiffs in the Nguyen Action sent a demand for arbitration to DSM on September 29, 2016 and provide proof of mailing to that effect.

38.     The subject matter of the omissions and misrepresentations in the Landmark Application for the Landmark Policy were material to the risk being insured.

39.     To that end, the truth of the representations in the Landmark Application was made an express condition of the Landmark Policy, and Weisfogel and IOAS/DSM/BGAW

specifically acknowledged that (a) the Landmark Policy was issued in reliance upon the truth of such representations, and (b) such representations were material to Landmark's decision to issue the Landmark Policy. Specifically, Condition N to the Landmark Policy contains a "Representations" provision which provides that:

> The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance. The signed application, and any attachments thereto, submitted in connection with this Policy are incorporated herein and constitute a part of this Policy.

40.     IOAS/DSM/BGAW, through Weisfogel and on behalf of the other Defendants, intended that Landmark would rely upon the misrepresentations.

41.     Landmark issued the Landmark Policy in reliance upon the truth and completeness of the statements made in the Landmark Application by IOAS/DSM/BGAW, through Weisfogel, and on behalf of the other Defendants.

42.     IOAS/DSM/BGAW, thus, obtained insurance from Landmark by fraud.

43.     Because the Landmark Policy was obtained by fraud, Landmark is entitled to rescind the Landmark Policy *ab initio*.

44.     As a consequence of the rescission of the Landmark Policy and pursuant to reservation of rights letters issued by the Company, Landmark is also entitled to reimbursement and/or restitution for the amount of the defense costs it has paid or will pay on behalf of Defendants.

## COUNT II – DAMAGES UNDER THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT AGAINST WEISFOGEL AND DSM/IAOS/BGAW

45.     Landmark incorporates by reference the allegations set forth in paragraphs 1 through 44 above as though each were set forth at length herein.

46.     The New Jersey Insurance Fraud Prevention Act, N.J.S.A. section 17:33A *et seq.* (the "Act") provides that a person violates the Act if he, "Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining… (b) an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract…" *id.* section 17:33A-4a.(4)(b).

47.     Section 17:33A-7(a) provides that any insurance company to which a false statement has been made in violation of the Act may recover compensatory damages, "which shall include reasonable investigation expenses, costs of suit and attorneys' fees."

48.     IOAS/DSM/BGAW and Weisfogel violated the Act by making multiple false and misleading statements for the purpose of obtaining the Landmark Policy in a manner which constitutes a pattern of misconduct and which caused damage to Landmark, all as described in more detail in the preceding and succeeding paragraphs.

## COUNT III – DECLARATORY JUDGMENT

49.     Landmark incorporates by reference the allegations set forth in paragraphs 1 through 48 as though each were set forth at length herein.

50.     In the event this Court declines to grant Landmark a full rescission of the Landmark Policy as requested in Count I, then, in the alternative, Landmark requests that the Court declare the rights and obligations of the parties under the Landmark Policy with respect to the Underlying Actions as more fully described below.

51.     Defendants DSM, IAOS, Weisfogel and Glassman tendered the Nguyen Action for defense and indemnification under the Landmark Policy.

52.     Defendants tendered the lawsuit titled *Shore Sleep Dental v. International Academy of Sleep* filed in the Superior Court of New Jersey Law Division, Docket No.SOM-L-891-17 (the "Shore Sleep Action") for defense and indemnification under the Landmark Policy. The Nguyen Action and Shore Sleep Action are referred to hereinafter collectively as the "Underlying Actions."

53.     Upon information and belief, Defendants seek to have Landmark defend and indemnify them under the Landmark Policy with respect to the Underlying Actions.

54.     Landmark is presently providing a defense to all defendants in the Underlying Actions, subject to a full reservation of rights to disclaim coverage upon further investigation, and/or subject to a determination in this action of Landmark's claim for fraud and rescission.

55.     Thus, there exists an actual controversy between Landmark and the Defendants within the jurisdiction of this Court and involving Landmark's rights and obligations under the Landmark Policy, which controversy may be determined by a judgment of this Court.

56.     Pursuant to 28 U.S.C. §2201 *et seq.*, Landmark is entitled to a judicial determination of its rights and obligations, if any, under the Landmark Policy, with respect to any "claims" within the meaning of the Landmark Policy in general, and with respect to the Underlying Actions in particular.

57.     The Landmark Policy affords no coverage for the Underlying Actions, in whole or in part, for one or more of the following reasons.

**Declaratory Judgment is Proper as the Claim in the Nguyen Action was First Made Prior to Inception of the Landmark Policy**

58.     Plaintiffs in the Nguyen Action ("Nguyen Plaintiffs") allege that in July 2015 they entered into an agreement with DSM pursuant to which DSM agreed to provide specialized

services and training through Weisfogel and Glassman to help the Nguyen Plaintiffs develop a practice treating sleep apnea.

59.     Nguyen Plaintiffs allegedly paid $150,000 to DSM and Weisfogel but within months of entering the Agreement, defendants DSM, IAOS, Weisfogel and Glassman ("Nguyen Defendants") allegedly failed and refused to provide the services. Nguyen Plaintiffs claim that Nguyen Defendants acted with malicious and fraudulent intent for the purpose of denying the contractual rights belonging to Nguyen Plaintiffs. Nguyen Plaintiffs allegedly demanded repayment of the $150,000, but Nguyen Defendants refused the demand.

60.     The Nguyen Complaint alleges causes of action for breach of contract, breach of the covenant of good faith and fair dealing, money had and received, fraud and negligent misrepresentation.

61.     The pleadings filed to date in the Nguyen Action allege that on September 19, 2016, the Nguyen Plaintiffs sent a demand for arbitration to DSM.

62.     The Nguyen Plaintiffs allege further that the demand for arbitration was received by DSM on September 29, 2016 and provide proof of mailing to that effect.

63.     The Landmark Policy provides coverage for claims that are first made against the Insured and reported during the Policy Period, which is listed on the Declarations Page as June 1, 2017 to June 1, 2018 (Insuring Agreement I.A).

64.     As such, in that the claim asserted in the Nguyen Action was first made against the Insured prior to June 1, 2017, the Landmark Policy does not afford coverage for the Nguyen Action.

**Declaratory Judgment is Proper as the Underlying Actions do not Allege Negligent Acts**

65.     The Landmark Policy's Insuring Agreement I.A. affords coverage for negligent acts, errors or omissions.

66.     The Nguyen Action alleges, inter alia, that Nguyen Defendants made representations to Nguyen Plaintiffs knowing they were not true, and for the intent of causing Nguyen Plaintiffs to rely on said representations.

67.     Nguyen Plaintiffs allege further that Nguyen Defendants intended to unlawfully harm Nguyen Plaintiffs, and that Nguyen Defendants believed and intended that they would profit financially from the fraud.

68.     As the Nguyen Action does not allege negligent acts, its claims are not within the coverage of the Landmark Policy.

69.     The Shore Sleep Action alleges, inter alia, that defendants DSM, IAOS, Weisfogel, Glassman, Pastor, Lauk, Aragona, Neuhaus and Bennardo ("Shore Sleep Defendants") made representations to plaintiffs in that action ("Shore Sleep Plaintiffs") knowing they were not true, and for the intent of causing Shore Sleep Plaintiffs to rely on said representations.

70.     The Shore Sleep Plaintiffs allege further that Shore Sleep Defendants intended to unlawfully harm Shore Sleep Plaintiffs, and that Shore Sleep Defendants believed and intended that they would profit financially from the fraud.

71.     As the Shore Sleep Action does not allege negligent acts, its claims are not within the coverage of the Landmark Policy.

**Declaratory Judgment is Proper as the Underlying Actions Involve Claims made before the Retroactive Date and necessarily involve acts that took place prior to the Retroactive Date**

72.     The Policy's Insuring Agreement I.A(3) requires that, to the extent there was a negligent act, error or omission, it must first have taken place after the Retroactive Date set forth in the Declarations.

73.     Weisfogel executed a New Jersey Notice Election of Retroactive Coverage (the "Retroactive Coverage Endorsement").   A copy of the executed Retroactive Coverage Endorsement is annexed hereto as Exhibit C.   By its terms, the Retroactive Date under the Landmark Policy is June 1, 2017.

74.     As noted above, the pleadings filed to date in the Nguyen Action allege that on September 19, 2016, Plaintiffs sent a demand for arbitration to DSM.

75.     The Nguyen Plaintiffs allege further that the demand for arbitration was received by DSM on September 29, 2016 and provide proof of mailing to that effect.

76.     Therefore, any acts that are the basis for the Nguyen Action necessarily took place prior to the June 1, 2017 Retroactive Date, and there is no coverage available under the Landmark Policy for the Nguyen Action.

**Declaratory Judgment is Proper as the Underlying Actions Involve acts that took place before the Retroactive Date**

77.     The Retroactive Coverage Endorsement provides two options: (a) Retroactive Coverage starting with the beginning date of the claims-made policy, or (b) Retroactive Coverage starting on a different (earlier) date with an additional premium charged for such coverage.

78.     IOAS/DSM/BGAW selected Option (a) which provides for Retroactive Coverage starting with the beginning date of the Claims Made Landmark Policy.

79.     Accordingly, the Landmark Policy does not provide coverage for claims involving negligent acts, errors or omission that first took place prior to June 1, 2017.

80.     The Nguyen Action alleges that the contracts between Nguyen Plaintiffs and Nguyen Defendants were entered in July 2015 and in October 2015.

81.     The Nguyen Action alleges further that shortly thereafter, Nguyen Defendants refused to provide the bargained-for-services.

82.     The Nguyen Action alleges further that since October 2015, Nguyen Defendants wrongfully failed to provide Nguyen Plaintiffs with the services they contracted for.

83.     As the Nguyen Action alleges acts, errors or omissions that first took place prior to the June 1, 2017 Retroactive Date, the Landmark Policy does not cover this Claim.

84.     The Shore Sleep Action alleges that the contracts between Shore Sleep Plaintiffs and Shore Sleep Defendants were entered in October 2015.

85.     The Shore Sleep Action alleges further that shortly thereafter, Shore Sleep Defendants refused to provide the bargained-for-services.

86.     The Shore Sleep Action alleges further that since October 2015, Shore Sleep Defendants wrongfully failed to provide them with the services they contracted for.

87.     As the Shore Sleep Action alleges negligent acts, errors or omissions that first took place prior to the June 1, 2017 Retroactive Date, the Landmark Policy will not cover this Claim.

**Declaratory Judgment is Proper as the Landmark Policy only Applies to Covered Persons**

88.     The Landmark Policy provides coverage to Covered Persons and Entities which are defined to mean:

**E. Covered Persons and Entities**

1. Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, or domestic partner, but only with respect to the professional services rendered by or on behalf of the Named Insured;
2. Any present or former principal, partner, officer, director, member, employee or volunteer worker of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;
3. Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy;
4. Any Medical Director while acting within the scope of his/her administrative and supervisory duties for the Named Insured. It is further agreed that coverage does not apply to the Medical Director while acting within his/her

capacity as a Physician, Surgeon or Dentist in the treatment, or direction of the treatment, of any patient;

5. Any student enrolled in a training program, but only while acting within the scope of their duties as such and under the direct supervision of faculty members or educators of such training program;

6. Any faculty member or educator of a training program, but only while acting within the scope of their duties as such.

89. Defendants Pastor, Lauk, Aragona, Neuhaus and Bennaro are not Covered Persons within the meaning of the Landmark Policy.

90. Accordingly, no coverage is available under the Landmark Policy with respect to the Underlying Actions for Defendants Pastor, Lauk, Aragona, Neuhaus and Bennaro.

**Declaratory Judgment is Proper as the Underlying Actions Allege Intentional Acts**

91. The Landmark Policy's Exclusion E precludes coverage for any Claim or Claim Expenses based upon or arising out of dishonest, fraudulent, criminal, malicious, or intentional acts, errors or omissions committed by or at the direction of any Insured.

92. The Nguyen Action alleges that Nguyen Defendants committed fraud and intended to harm Nguyen Plaintiffs.

93. The Shore Sleep Action alleges that Shore Sleep Defendants fraudulently induced Shore Sleep Plaintiffs to pay $150,000 each plus additional funds, and intentionally interfered with Shore Sleep Plaintiffs' expectation of economic advantage.

94. Accordingly, Exclusion E bars coverage for the Underlying Actions.

**Declaratory Judgment is Proper as the Underlying Actions Allege Breach of Contract**

95. The Landmark Policy's Exclusion H precludes coverage for any Claim or Claim Expenses based upon or arising out of any obligation or liability assumed by the Insured under

any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement.

96.     The Underlying Actions allege that defendants breached the terms of their written agreement with plaintiffs in those actions by failing to perform their obligations under the Agreements.

97.     Plaintiffs in the Underlying Actions also allege breach of the covenant of good faith and fair dealing which is inherent in the written agreements.

98.     Accordingly, the Underlying Actions come squarely within the scope of Exclusion H and as such are not covered under the Landmark Policy.

**Declaratory Judgment is Proper as to the Nguyen Action as the Insured had Prior Knowledge**

99.     The Landmark Policy's Exclusion O precludes coverage for any Claim or Claim Expenses based upon or arising out of any alleged act, error, omission or circumstance likely to give rise to a Claim that an Insured had knowledge of prior to the effective date of the Landmark Policy, which is June 1, 2017.

100.    This exclusion includes, but is not limited to, any prior Claim or possible Claim referenced in the Insured's application.

101.    As set forth above, IOAS/DSM/BGAW had knowledge, prior to June 1, 2017, of an alleged act, error, omission or circumstance likely to give rise to a Claim by the Nguyen Plaintiffs.

102.    Accordingly, to the extent the Landmark Policy comes within the scope of Exclusion O, the Landmark Policy does not respond to the Nguyen Action.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Landmark Insurance Company respectfully demands that the Court enter judgment in its favor and against Defendants as follows:

a. Under Count I, declaring that Landmark Policy No. LHM763897 is rescinded *ab initio* on the basis of fraud, and, as such, Landmark has no duty to defend or indemnify Defendants under the Landmark Policy with respect to any Underlying Action or with respect to any past, present or future "claim" made under the Landmark Policy;

b. Under Count I, awarding Landmark an amount equal to (a) the amount expended by Landmark to defend Weisfogel and DSM against the Underlying Actions, <u>less</u> (b) the amount of the premium paid by DSM to Landmark for the Landmark Policy;

c. Under Count II, awarding judgment based on the violation of N.J.S.A. section 17:33A-4(a), and awarding compensatory damages pursuant to N.J.S.A. section 17:33A-7(a), including, but not limited to, Landmark's reasonable investigation expenses, costs of suit and attorneys' fees, and treble damages;

d. Under Count III for a declaration that there is no coverage under the Landmark Policy for the Underlying Actions;

e. For the costs and disbursements of this action and such other and further relief as this Court deems just and proper

Dated:    New York, New York
          February 14, 2018

                              Yours, etc.,

                              D'AMATO & LYNCH, LLP

          By:                 _____
                              Stephen F. Willig, Esq.
                              *Attorneys for Landmark American*
                              *Insurance Company*
                              225 Liberty Street
                              New York, New York 10281
                              (212) 269-0927

18

TO:    Dental Sleep Masters, LLC (DSM, LLC)
c/o AJ Santye & Co.
36 East Main Street
Somerville, NJ 08876

International Academy of Sleep (IAOS, LLC)
c/o AJ Santye & Co.
36 East Main Street
Somerville, NJ 08876

Avi Weisfogel
Founder of DSM/PES
Director IAOS
2400 Morris Avenue, Suite 202
Union, NJ 07083

Barry Glassman
1329 Hamilton Street
Allentown, PA 18102

Rebecca Pastor
206 Montrose Avenue
South Orange, NJ 07079

Rebecca Lauk, DDS
1675 Keller Parkway
Keller, TX 76248

Sal Aragona, DDS
37020 Garfield Road
Charter Township of Clinton, MI 48036

Jay Neuhaus, DDS
110 E. 40th Street, Suite 406
New York, NY 10016

Anthony Bennardo, DDS
87 S. McLean Blvd
South Elgin, IL 60177

#1630121v2

# EXHIBIT A

| RSUI Group, Inc.<br>945 East Paces Ferry Road, Suite 1800<br>Atlanta, GA  30326-1160 | APPLICATION FOR MISCELLANEOUS<br>MEDICAL LIABILITY INSURANCE<br>(CLAIMS-MADE FORM) |
|---|---|

**General Applicant Information**

1. Name of Applicant:  International Academy of Sleep/Dental Sleep Masters/BGAW Management

2. Principal Address:2400 Morris Ave Suite 202

3. City:Union                        County:union                State:NJ            Zip Code:07083

4. Phone:908258-341                              Website Address:iaosleep.org

5. a. Does the Applicant practice as:      X☐Corporation    ☐Partnership      ☐Individual      ☐Prof. Association

   ☐Other:

   b. In what states is the applicant registered and licensed to practice?    ALL

6. Date Applicant was established.      07  / 01  /  2014
                                       MM     DD       YY

7. Is the firm engaged in, owned by, associated with or controlled by any other business?      no

   If yes, give details

8. PROFESSIONAL ACTIVITIES AND SPECIALTY (Attach narrative description if necessary)

   ☐  Health Maintenance Organization              ☐  Residential Healthcare Facility

   ☐  Home Healthcare Agency                       ☐  Other (Specify)     Coaching and Mentoring dentists

   ☐  Medical/Testing Laboratory                       in the world of sleep apnea

   ☐  Nurse's Registry

   ☐  Out-Patient Clinic

9. State approximate division of applicant's patients among:

| a. Alcoholics | (        )% | h. Holistic Medicine | (        )% | n. Research or Experimental | (        )% |
|---|---|---|---|---|---|
| b. Counseling /<br>Family Planning | (        )% | i. Medical | (        )% | o. Senile or Aged | (        )% |
| c. Communicable | (        )% | j. Mentally Retarded | (        )% | p. Stress Testing | (        )% |
| d. Dental | ( 100 )% | k. Obstetrical | (        )% | q. Surgical | (        )% |
| e. Drug Addicts | (        )% | l. Pediatric | (        )% | r. Tubercular | (        )% |
| f. General | (        )% | m. Psychiatric | (        )% | s. Other | (        )% |
| g. Hemodialysis | (        )% | | | | |

RSG 50026 0209

10. a. List the number and type of applicant's employees and volunteers. If None, State None. ___1_____

| Number | Type of Profession | Number | Type of Profession |
|---|---|---|---|
| 1) _____ | Inhalation Therapists | 9) _____ | Perfusionists |
| 2) _____ | Laboratory Technicians | 10) _____ | Pharmacists |
| 3) _____ | Nurse Anesthetists | 11) _____ | Physicians – Minor Surgery |
| 4) _____ | Nurses, Licensed Practical | 12) _____ | Physicians – No Surgery |
| 5) _____ | Nurse Practitioner | 13) _____ | Physiotherapists |
| 6) _____ | Nurses Registered | 14) _____ | Social Workers |
| 7) _____ | Opticians | 15) _____ | Speech Therapists |
| 8) _____ | Optometrists | 16) _____ | Other |

b. List the number and type of independent contractors who provide professional services on behalf of the applicant.

If None, State None. ___none_____

_____

c. Are all the above individuals licensed in accordance with applicable state and federal regulations?  Yes X☐  No ☐

ATTACH DETAILED EXPLANATION FOR ANY "YES" ANSWERS:

Has the applicant or have any of the above employees:

1) Ever been the subject of disciplinary or investigative proceedings or reprimand by a governmental or administrative agency, hospital or professional association?  Yes ☐  No X ☐

2) Ever been convicted for an act committed in violation of any law or ordinance other than traffic offenses?  Yes ☐  No X ☐

3) Ever been treated for alcoholism or drug addiction?  Yes ☐  No X ☐

4) Ever had any state professional license or license to prescribe or dispense narcotics refused, suspended, revoked, renewal refused or accepted only on special terms or ever voluntarily surrendered same?  Yes ☐  No X ☐

11. Does the applicant perform:

a. Acupuncture or acupuncture anesthesia? Explain: _____ Yes ☐  No X ☐

b. Angiography/Arteriography/Venography? Describe: _____ Yes ☐  No X ☐

c. Catheterization (other than urinary or umbilical)? Describe: _____ Yes ☐  No X ☐

d. Closed reduction of compound fractures and/or normal deliveries and/or dermabrasion?  Yes ☐  No X ☐

e. Injection of radioisotopes and/or use of irradiated substances? Describe: _____ Yes ☐  No X ☐

f. Radiation Therapy and/or Chemotherapy? Describe: _____ Yes ☐  No X ☐

g. Psychiatric shock therapy?  Yes ☐  No X ☐

h. Silicone Injections? Describe: _____ Yes ☐  No X ☐

i. Spinal Anesthesia (other than saddle blocks or caudals)? _____ Yes ☐  No X ☐

j. Laser Treatment? Describe: _____ Yes ☐  No X ☐

RSG 50026 0209

12. Does the applicant perform any:

    a. Surgery other than Incision of superficial boils or suturing superficial fascia?     Yes ☐   No X ☐

    b. Circumcisions and/or dilation and curettage and/or insertion of temporary pacemakers?     Yes ☐   No X ☐

    c. Tonsillectomies and/or Adenoidectomies and/or Caesarean Sections?     Yes ☐   No X ☐

    d. Cosmetic Plastic Surgery? Describe: _____     Yes ☐   No X ☐

    e. Excision of large cysts and/or I&D of deep-seated boils or carbuncles?     Yes ☐   No X ☐

    f. Hysterectomies?     Yes ☐   No X ☐

    g. Open reduction of fractures? Describe: _____     Yes ☐   No X ☐

    h. Surgery for weight reduction of patients?     Yes ☐   No X ☐

    i. Abortions and/or menstrual extractions? Describe (include trimester, method and number of Abortions performed per month): _____     Yes ☐   No X ☐

    j. Silicone Implants? Describe: _____     Yes ☐   No X ☐

    k. Sterilization Procedures? Describe: _____     Yes ☐   No X ☐

    l. Biopsies and/or endoscopies? List types performed: _____     Yes ☐   No X ☐

    m. Sex change operations? Describe and advise the number performed per year:     Yes ☐   No X ☐

_____

    n. Other Surgery? Describe: _____     Yes ☐   No ☐

13. Does the applicant perform hospital emergency room care?

    a. For its own regular patients?     Yes ☐   No X ☐

    b. For patients not its own?     Yes ☐   No X ☐

    c. If answer to b. is yes, please specify: the percentage of its time devoted to this work = (_____)%, the number of hours per month devoted to this work = (_____) hrs.

14. Does the applicant use drugs for weight reduction patients?     Yes ☐   No X ☐
    If yes, on last page list drugs used and advise: percent of practice devoted to weight reduction, frequency and duration of prescriptions for weight reduction drugs and quantity dispensed by applicant?

15. Does the applicant administer any methadone treatment?     Yes ☐   No X ☐
    If yes, describe treatment and controls used and indicate number of treatments during last 12 months (_____), next 12 months (_____).

16. Is anesthesia (other than topical or by means of local infiltration) administered by either applicant or others?     Yes ☐   No X ☐

    If yes, attached detailed explanation.

17. Does the applicant maintain any beds for overnight occupancy?     Yes ☐   No X ☐

    If yes, total number: _____

18. State number of X-ray machines owned or operated and whether they are used for diagnosis or treatment or both.

    State by whom treatment is given and number of procedures: _____

RSG 50026 0209

19. Does the applicant own (wholly or in part), operate or administer any hospital, nursing home or other institution where medical services are customarily rendered?   Yes ☐   No X ☐

If yes, give details, including name, location, size and number of beds. _____

20. State sources and amounts of total revenue:

| Source | Amount Last Policy Year | Est. Amount This Policy Year |
|---|---|---|
| a.   Charitable Contributions | $ _____ | $ _____ |
| b.   Government Funding | $ _____ | $ _____ |
| c.   Fee for Services | $  2,200,000 | $ _____ |
| d.   _____ | $ _____ | $ _____ |
| e.   _____ | $ _____ | $ _____ |
| TOTAL GROSS REVENUE: | $ _____ | $ _____ |

21. Number of patient encounters last 12 months (_____0) and/or patient tests carried out (_____).

(NOTE: "Patient encounters" refers to number of *visits* – not number of patients.)

22. Number of estimated patient encounters next 12 months ( 0____ ) and/or patient tests carried out (_____).

(NOTE: "Patient encounters" refers to number of *visits* – not number of patients.)

23. If applicant has a training school, complete the following.

| Specify profession for which students are being trained | Max. No. of students per session | No. of sessions per year | % of Time involved in clinical setting | Number of students | Qualifications of faculty (eg. MD, RN, PhD) |
|---|---|---|---|---|---|
| Sleep Apnea for dentists | 50 | 16 | 0 | 110 | none |

24. If applicant is an ambulance service, please complete the following.

Number of Ground Ambulances 0                    Number of Emergency Calls (per year)    0

Number of Air Ambulances    0                       Number of non-Emergency Calls (per year)  0

Radius of Services    0

25. Give Professional Liability Coverage for last five years for the firm:

| Carrier | Limit | Deducible | Premium | Expiration (Mo/Day/Yr) |
|---|---|---|---|---|
| none | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

If expiring insurance is a claims made policy, what is the retroactive date? _____

RSG 50026 0209

26. Is the applicant currently insured under a Commercial General Liability Policy?　　　Yes ☐　No☐ X

If yes, please give details:

|  | Limits | | | | |
|---|---|---|---|---|---|
| LimitsInsuranceCompany BI | Type ofCoverage PD | | | From | To |

27. Has any application for Professional Liability Insurance made on behalf of the firm, any predecessors or sin business or present partners ever been declined or has the insurance ever been cancelled or renewal refused?　　　Yes ☐ No X ☐

If yes, please give details: _____

28. Has any claim ever been made against the applicant or any persons named in question 1?　　　Yes X ☐ No ☐

If yes, how many?　1_____

Please attach currently valued company loss runs for the past 5 years and details stating:
1) Date when claim was made; 2) date the act giving rise to the claim was committed; 3) name of the claimant; 4) nature of the claim; 5) amount involved including reserves; and 6) final disposition

29. Is the applicant aware of any circumstances which may result in any claim against the applicant or any persons named in question 1?　　　Yes ☐ No X ☐

If yes, how many?　_____

Please attach currently valued company loss runs for the past 5 years and details stating:
1) Date when claim was made; 2) date the act giving rise to the claim was committed; 3) name of the claimant; 4) nature of the claim; 5) amount involved including reserves; and 6) final disposition

30. Has any insurer cancelled or refused to renew any similar insurance during the past five years?　　no_____

31. Limits of Liability requested　1,000,000　　　Deductible　5000

32. Desired term of policy: From　asap　　　To

## Representations

The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part thereof.

This application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made part of the policy. The undersigned Applicant declares that if the information supplied on this application changes between the dates of this application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

_Joel Weisfogel_ _____ (signature)　　owner　　　5-27-17

Signature of the Applicant　　　　　Title　　　　　Date

_____

Producer

RSG 500260209

# EXHIBIT B



## *Professional Liability Insurance*

**CLAIM OFFICE:**

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 231-3755
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com

RSG 51029 1114



**PROFESSIONAL LIABILITY POLICY DECLARATIONS**
**(Claims-Made and Reported Form)**

## Landmark American Insurance Company
(A New Hampshire Stock Co.)
(hereinafter called "the Company")

EXECUTIVE OFFICES: 945 East Paces Ferry Road, Suite 1800, Atlanta, GA 30326-1160

**Policy Number:** LHM763897  **RENEWAL:** NEW

**Named Insured and Mailing Address:**  **Producer Name:**

INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW
MANAGEMENT
2400 MORRIS AVENUE
SUITE 202
UNION, NJ 07083

**Policy Period: From:** 6/1/2017  **To:** 6/1/2018  at 12:01 A.M. Standard Time at the Named Insured address as stated herein.

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED AS FOLLOWS:

1. **NAMED INSURED'S PROFESSIONAL SERVICES:** CONSULTING AND MENTORING DENTISTS IN SLEEP APNEA

2. **LIMITS OF LIABILITY:** $ 1,000,000 **Each Claim**

   $ 1,000,000 **Aggregate Limit**

3. **DEDUCTIBLE:** $ 5,000 **Each Claim**

4. **RETROACTIVE DATE:** 6/1/2017

5. **PREMIUM:** $ 6,800.00 Not Subject to Audit

6. **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

   See attached forms list.

THESE DECLARATIONS TOGETHER WITH A SIGNED COPY OF THE NAME INSURED'S APPLICATION FOR THIS POLICY, COVERAGE FORM(S), FORMS AND ENDORSEMENTS, ISSUED TO FORM PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE AFFORDED BY THE POLICY WITH YOUR INSURANCE AGENT OR BROKER.

June 06, 2017  By: _____
Date  Authorized Representative

Submit ID#.   362644   Binder ID#
Created By:   TW

RSG 50002 0814

**LANDMARK AMERICAN INSURANCE COMPANY**

---

## SCHEDULE OF POLICY ATTACHMENTS AND FORMS

| Form Number | Form Title |
|---|---|
| RSG 51043 0217 | Medical Professional Liability Coverage Form Claims Made and Reported Basis - Broad |
| ENDT-01 | Direct Patient Care Exclusion - RSG 56025 1009 |
| ENDT-02 | Minimum Retained Premium - RSG 54025 0405 |
| ENDT-03 | New Jersey Surplus Lines Disclosure Notice - RSG 99057 0106 |
| ENDT-04 | Nuclear Energy Liability Exclusion - RSG 56058 0903 |
| ENDT-05 | Products Liability Exclusion - RSG 56099 0405 |
| ENDT-06 | Service Of Suit - RSG 94022 0407 |
| ENDT-07 | Specific Claim Exclusion |
| ENDT-08 | State Fraud Statement - RSG 99022 0415 |
| ENDT-09 | Violation of Consumer Protection Laws Exclusion - RSG 56121 0216 |

**Policy No.:** LHM763897

RSG 54081 0710

LANDMARK AMERICAN INSURANCE COMPANY

*This Form Provides Claims-Made Coverage.*
*Please Read The Entire Form Completely.*

# MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM
# CLAIMS MADE AND REPORTED BASIS – BROAD FORM

Throughout this document, the word "Insured" means any person or entity qualified as such under **Part I. E. Covered Persons and Entities.** The word "Company" refers to the Company providing the insurance shown on the Declarations.

Other words and phrases that appear in **bold** have special meaning. Refer to **Part III. Definitions**.

**Part I.  Insuring Agreements**

**A.  Covered Services**

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, even if such **Claim** is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period,** and reported to the Company no later than sixty (60) days after the end of the **Policy Period;**

2. Negligent act, error or omission took place in a covered territory;

3. Negligent act, error or omission took place after the **Retroactive Date** as shown in the Declarations.

**B.  Defense and Settlement**

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company's right and duty to defend any **Claim** shall end when the Company's Limit of Liability has been exhausted by payment of **Damages** and/or **Claim Expenses,** or has been tendered to the Insured or to a court of competent jurisdiction.

The Company shall not settle any **Claim** without the Insured's written consent.  The Insured shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company.

**C.  Policy Limits**

Regardless of the number of persons or entities insured or included in **Part I. E. Covered Persons and Entities,** or the number of claimants or **Claims** made against the Insured:

1. The maximum liability of the Company for **Damages** resulting from each **Claim** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as each **Claim;**

2. The maximum liability of the Company for all **Damages** as a result of all **Claims** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as Aggregate.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability.  All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy.  All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** and all such **Claims** shall be subject to the same Each Claim Limit of Liability during that **Policy Period**.

**Claim Expenses** shall be paid by the Company in addition to the applicable Limits of Liability stated in the Declarations. The Company's obligation to pay **Claim Expenses** in addition to the applicable Limits of Liability as shown in the Declarations shall be limited to an additional **Claims Expense** Limits of Liability equal to the amount as shown in the Declarations as the Each Claim Limit of Liability.

The Company shall not be obligated to pay any **Claim** for **Damages** or defend any **Claim** after the Limit of Liability has been exhausted by payment of judgments, settlements, **Claim Expenses** or any combination thereof.

**D.  Deductible Provisions**

The deductible amount as shown in the Declarations shall be paid by the Insured and applies to each **Claim**, and includes **Damages** or **Claim Expenses**, whether or not a loss payment is made.  If the deductible amount is initially paid by the Company, the Named Insured shall reimburse the amount paid within thirty (30) days, upon written request of the Company.

**E.  Covered Persons and Entities**

   **1.**  Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, or domestic partner, but only with respect to the professional services rendered by or on behalf of the Named Insured;

   **2.**  Any present or former principal, partner, officer, director, member, employee or volunteer worker of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

   **3.**  Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy;

   **4.**  Any Medical Director while acting within the scope of his/her administrative and supervisory duties for the Named Insured.  It is further agreed that coverage does not apply to the Medical Director while acting within his/her capacity as a Physician, Surgeon or Dentist in the treatment, or direction of the treatment, of any patient;

   **5.**  Any student enrolled in a training program, but only while acting within the scope of their duties as such and under the direct supervision of faculty members or educators of such training program;

   **6.**  Any faculty member or educator of a training program, but only while acting within the scope of their duties as such.

**F.  Covered Territory**

This policy applies to covered **Claims** arising out of negligent acts, errors or omissions committed anywhere in the world.  However, the policy does not provide coverage for **Claims** made against the Insured in countries where the United States of America has declared or imposed a trade embargo or sanctions, or in countries where the United States of America does not maintain diplomatic relations.

**G.  Extended Reporting Period**

If the policy is not renewed for any reason, or is cancelled for any reason other than for nonpayment of premium or deductible (whether cancelled by the Company or by the Named Insured), the Named Insured as shown on the Declarations, has the right to purchase, within sixty (60) days of policy termination, an extension of the coverage granted by this policy.  This reporting period extension shall remain in force for a period of either twelve (12), twenty-four (24), or thirty-six (36) months after the policy terminates, but only for **Claims** resulting from negligent acts, errors or omissions committed before the effective date of the cancellation or nonrenewal, and otherwise covered by this policy.  Increased premiums or deductibles or modifications of coverage terms or conditions upon renewal do not constitute cancellation or nonrenewal.

The premium for this Extended Reporting Period will not exceed one hundred percent (100%) for twelve months, one hundred fifty percent (150%) for twenty-four months, or one hundred seventy-five percent (175%) for thirty-six months of the full annual premium set forth in the Declarations and any attached endorsements, and must be elected and paid within sixty (60) days after the effective date of the policy's termination. Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

The Extended Reporting Period is added by endorsement and, once endorsed, cannot be cancelled. The Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are part of, and not in addition to, the Company's Limits of Liability stated in the Declarations.

**H. Supplementary Coverages**

It is agreed that any and all payments made for the following is included within, and shall not be in addition to, the Policy Limits as described in this Policy.

1. The Company will provide for the defense of any complaint, investigation or other action (**Claim Expenses** only) first brought against an Insured during the **Policy Period** by any licensing board, disciplinary board, peer review committee, or similar entity alleging professional misconduct or violation of the rules of professional conduct that occurred after the Policy's **Retroactive Date** and that arises out of the Insured's performance of professional services as described in the Declarations. The Company's obligation to pay **Claim Expenses** to defend an Insured under this supplementary coverage is subject to a sub-Limit of Liability in an aggregate amount of $25,000. **Damages** are not covered by this supplementary coverage.

   This sub-Limit of Liability is the maximum amount payable under this provision for the **Policy Period**, regardless of the number of disciplinary proceedings first commenced during the **Policy Period** or the number of Insureds subject to disciplinary proceedings. There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

2. The Company will pay reasonable expenses incurred by the Insured at the Company's request to assist in the investigation of the **Claim** or defense of the suit, including actual loss of earnings up to $500 a day for each Insured because of time off from work, subject to an aggregate amount of $5,000 for each individual Insured for each **Claim**, not to exceed an aggregate amount of $10,000 per **Policy Period**. There will be no deductible for payments made under this provision, and any such payments are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

3. The Company will pay fines and penalties specified in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the Health Information Technology for Economic and Clinical Health Act (HITECH) as assessed against the Insured, or assessed against third parties who make a claim on the Insured for indemnification or contribution for such fines and penalties based on violations and breaches of the privacy and security provisions of HIPAA, and HITECH, and/or regulations promulgated under said statutes relating to Protected Health Information (PHI) and electronic Protected Health Information (ePHI), but only if such violations or breaches arise out of professional services as described in the Declarations or from the handling of PHI or ePHI of the Insured's own personnel.

   For the purposes of this coverage, **Claim** shall also include the notice of investigation, audit, and/or assessment of fines or penalties by the U.S. Department of Health and Human Services or the Office of Civil Rights in connection with violations of or breaches under HIPAA and/or HITECH.

   For the purposes of this coverage, **Damages** shall also include HIPAA and/or HITECH fines and penalties.

   The coverage described above is subject to a sub-Limit of Liability in an aggregate amount of $100,000. This sub-Limit of Liability is the maximum amount payable under this provision for the **Policy Period**, regardless of the number of violations and/or breaches by the Insured of the privacy and security provisions of HIPAA and HITECH and the regulations established thereunder arising from the performance of or failure to perform professional services as described in the Declarations. Any payments made under this provision are a part of, and not in addition to, the Company's Limits of Liability as described in the Declarations.

4. The Company will pay **Damages** or **Claims Expenses** as a result of **Claims** arising out of circumstances involving the use of excessive influence of power on any patient, or the actual or alleged inappropriate physical contact or contact that is deemed by or alleged by the plaintiff to be sexual or in any way unwelcomed, is limited to a sub-Limit of Liability of $250,000 each claim and $500,000 in the aggregate. This sub-limit of liability is part of and not in addition to the applicable Limits of Liability as shown in the Declarations. Payment of **Damages** or **Claim Expenses** by the Company reduces the applicable Limits of Liability as shown in the Declarations.

Once the sub-Limit of Liability is exhausted, no additional coverage shall be afforded by this coverage provision and the following Exclusion will be added to the policy:

It is agreed that no coverage shall apply under this policy to any **Claim** or **Claim Expenses** arising out of or involving the use of excessive influence or power on any patient, or the actual or alleged inappropriate physical contact or contact that is deemed by or alleged by the plaintiff to be sexual or in any way unwelcomed.

## Part II. Exclusions

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

**A.** **Personal Injury** or **Advertising Liability**.

**B.** Obligations of any Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**C.** **Bodily Injury** to any of the following:

    **1.** Officers, directors, partners, employees or volunteer workers of the Insured arising out of and in the course of employment by the insured;

    **2.** The spouse, child, parent, or sibling of **C. (1.)** above.

**D.** The insolvency or bankruptcy of an Insured or of any other person, firm or organization.

**E.** Dishonest, fraudulent, criminal, malicious, or intentional acts, errors or omissions committed by or at the direction of any Insured.

**F.** Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

**G.** A **Claim** by one Insured under this policy against another Insured under this policy, unless such **Claim** arises solely out of professional services performed for that party.

**H.** Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement.

**I.** The ownership, rental, leasing, maintenance, use (including operation, loading and unloading), or repair of any real or personal property, including **Damage** to property owned, occupied or used by, rented to or leased to an Insured.

**J.** The rendering or failure to render professional services by the Insured as a physician, surgeon or dentist.

**K.** The performance of any service by any Insured while under the influence of intoxicants or illegal drugs.

**L.** The ownership, maintenance, use (including operation, loading and unloading), or entrustment to others of any aircraft, automobile, motor vehicle, mobile vehicles or watercraft owned or operated by or rented or loaned to any insured.  This exclusion includes the movement of patients in and out of any motor vehicle, aircraft, automobile or watercraft.

**M. 1.** The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos;

    **2.** The failure to discover or disclose the existence or amount of **Pollutants** or asbestos;

    **3.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with **M. (1.)** or **(2.)** above;

    **4.** Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or, in any way respond to or assess the effects of **Pollutants** or asbestos;

    **5.** Any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or, in any way, responding to, or assessing the effect of **Pollutants** or asbestos.

**N.** **1.** Refusal to employ;

    **2.** Termination of employment;

    **3.** Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, retaliation or other employment related practices, procedures, policies, acts or omissions;

    **4.** Consequential **Bodily Injury** or **Personal Injury** as a result of **N. (1.)** through **(3.)** above.

       This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share **Damages** with or to repay someone else who must pay **Damages** because of the injury.

       It is further agreed that no coverage shall apply under this policy to any **Claim** brought by or against any spouse, child, parent, brother or sister of the Insured or any other person. The Company shall not have a duty to defend any **Claim**, suit, arbitration or any other form of trial court proceeding.

**O.** Any alleged act, error, omission, or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

**P.** Infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan.

**Q.** Experimental procedures and experimental products, including procedures using experimental products. Experimental procedures and products are those not approved by the United States Food and Drug Administration (FDA).

**R.** Obstetrical procedures, including but not limited to any emergency obstetrical procedures.

## Part III. Definitions

**A.** **Advertising Liability** means injury arising out of one or more of the following offenses:

    **1.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **2.** Oral or written publication of material that violates a person's right of privacy;

    **3.** Misappropriation of advertising ideas or style of doing business.

**B.** **Bodily Injury** means physical or mental harm, sickness or disease sustained by a person, including death resulting from any of these at any time.

**C.** **Claim** means a written demand for monetary or non-monetary relief received by the Insured during the **Policy Period**, including the service of suit, or the institution of an arbitration proceeding. Additionally, **Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A. Notice of Claim** will be considered a **Claim** first made during the **Policy Period**.

**D.** **Claim Expense** means expenses incurred by the Company or the Insured with the Company's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and includes:

    **1.** Attorney fees;

    **2.** Costs taxed against the Insured in any **Claim** defended by the Company;

    **3.** Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability;

    **4.** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit and only if said **Claims** are covered by the policy;

    **5.** Reasonable expenses incurred by the Insured at the Company's request other than:

       **a.** Loss of earnings;

       **b.** Salaries or other compensation paid to the Insured or any employee of the Insured.

E. **Damages** means compensatory judgment, award or settlement, including punitive or exemplary damages, except damages for which insurance is prohibited by law. **Damages** does not include disputes over fees, deposits, commissions or charges for goods or services.

F. **Policy Period** means the period of time stated in the Declarations or any shorter period resulting from policy cancellation or amendment to the policy.

G. **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution or abuse of process;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

H. **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy.

I. **Pollutants** means any solid, liquid, gaseous or thermal irritant, contaminant or toxin, whether live or inanimate, including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, asbestos, asbestos compounds or materials containing asbestos, radon, waste or any like substances. Waste includes materials to be recycled, reconditioned or reclaimed.

**Part IV. General Conditions.** The following Conditions are a precedent to coverage under the Policy:

A. **Notice of Claim**

The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a **Claim**. Where notice to the Company of such incidents, occurrences or offenses has been acknowledged as adequate by the Company in writing, subsequent **Claims** derived from such incidents, occurrences or offenses will be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided. The Insured also must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any **Claim**, and must authorize the Company to obtain records and other information. Please send all claim information to:

Attention: **Claims** Dept.
RSUI Group, Inc.
945 East Paces Ferry Road, Suite 1800
Atlanta, Georgia 30326-1160
Or Via Email:
reportclaims@rsui.com

B. **Prohibition of Voluntary Payments and Settlements**

With respect to any **Claim** covered under this policy, the Insured will not make payment, admit liability, settle **Claims,** assume any obligation, agree to arbitration or any other means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written Company approval, except at the Insured's own cost.

C. **Cooperation**

The Insured will cooperate with the Company in the conduct of a **Claim**, and upon the Company's request, submit to examination and interrogation by the Company representative, under oath if required, and will attend hearings and trials and assist in effecting settlements, securing and giving evidence, and obtaining the attendance of witnesses. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment that the Insured may have, and the Company may exercise those rights in the name of the Insured.

**D.  Notice of Cancellation and Nonrenewal**

The Named Insured may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

For other than nonpayment of premium or deductible, the Company will give the Named Insured sixty (60) days written notice prior to cancellation or nonrenewal of this policy by mailing or delivering the notice to the first Named Insured's last known mailing address. If the Company cancels the policy due to the Named Insured's failure to pay a premium when due, this policy may be cancelled by the Company giving not less than 10 days written notice of cancellation.

The cancellation notice will state the effective date of the cancellation and the policy will terminate on that date. If cancelled by the Company, the earned premium will be computed pro-rata. If cancelled by the Insured, the earned premium will be computed short rate.

**E.  Premium and Audit**

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

The first Named Insured as shown in the Declarations must keep records of information the Company will need for premium computation and upon request must send the Company copies of the information.

**F.  Authorization**

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to the giving and receiving of all notices, exercising of the Extended Reporting Period option, canceling of the policy, paying of all premiums and deductibles and the receiving of any return premiums that may become due.

**G.  Change**

This policy contains all of the agreements concerning the insurance provided. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Company's consent. The policy terms can be amended or waived only by endorsement issued by the Company, and made a part of this policy.

**H.  Subrogation**

In the event of any **Claim** under this policy, the Company will be subrogated to all the Insured's rights of recovery against any person or organization, and the Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured will do nothing after the loss to prejudice such rights.

**I.  Other Insurance**

This policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.

When this insurance is excess, the Company shall have no duty under this policy to defend any **Claim** or suit that any other insurer has a duty to defend. If such other insurer refuses to defend such **Claim** or suit, the Company shall be entitled to the Insured's rights against all such insurers for any **Claim Expenses** incurred by the Company.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such **Claims.**

**J.  Actions Against the Insurer**

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy, and until the amount of the Insured's obligations to pay shall have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant and the Company.

**K.  Non-Transferability**

The Insured's rights and duties under this policy may not be transferred without the written consent of the Company.

**L.  Coverage in Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this policy.

**M.  False or Fraudulent Claims**

If an Insured makes any **Claim** that is false or fraudulent, this insurance shall become void and entitlement to coverage for all **Claims** hereunder shall be forfeited.

**N.  Application**

The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance.  The signed application, and any attachments thereto, submitted in connection with this Policy are incorporated herein and constitute a part of this Policy.



RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA 30326-1160

Phone   (404) 231-2366
Fax     (404) 231-3755

ATTN: Health Care Providers – Applicants and Policyholders

RE:    HIPAA Privacy and Security Rule Compliance

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and associated regulations require health care providers to maintain the confidentiality of patients' protected health information ("PHI"). PHI includes, among other things, medical records and billing records relating to medical care. As a "covered entity" under HIPAA, you are not permitted to share PHI with a "business associate" unless the business associate has provided you with a Business Associate Agreement that provides for the protection of PHI. Although a professional liability insurer may not be deemed to be a "business associate" as defined by HIPAA, we want to assure your compliance with the regulations in the event a Business Associate Agreement is necessary.

We are committed to maintaining the confidentiality of PHI that you may provide as a part of the administration of your insurance coverage. Enclosed you will find a Business Associate Agreement that explains how we will safeguard any PHI that you may provide to us in the process of underwriting your policy or handling a claim on your behalf. Please review it and keep it with your professional liability policy. You do not need to sign or return this agreement to us. Please maintain it in your files to document our mutual obligations with respect to PHI.

If you have any questions or concerns about the Business Associate Agreement, please contact Jesse Wilbanks at (404)682-7635 or jwilbanks@rsui.com.

Sincerely,

Jesse Wilbanks

Jesse Wilbanks
Regulatory Compliance
RSUI Group, Inc.

RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company

A member of Alleghany Insurance Holdings LLC

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT ("Agreement") is executed by Landmark American Insurance Company, Covington Specialty Insurance Company, RSUI Indemnity Company and RSUI Group, Inc. ("Business Associate") in favor of its insured healthcare providers (the "Provider").

## RECITALS

WHEREAS, the Business Associate provides professional liability insurance to the Provider pursuant to a policy of insurance (the "Business Arrangement"), and in connection with the Business Arrangement the Provider discloses to the Business Associate certain individually identifiable protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended from time to time.

WHEREAS, the parties desire to comply with the HIPAA standards for privacy of PHI of patients of the Provider, and to set forth the terms and conditions pursuant to which the parties will handle PHI that Business Associate receives in the course of performing its services for or on behalf of the Provider under the Business Arrangement.

NOW THEREFORE, for and in consideration of the recitals above, the benefits to Business Associate under the Business Arrangement and the mutual covenants and conditions herein contained, Business Associate agrees as follows:

## SECTION 1 – DEFINITIONS

Terms used, but not otherwise defined in the Agreement shall have the same meaning as set forth in the Standards for Privacy of Individually Identifiable Health Information (the "Privacy Rules"), 45 CFR parts 160-164, as promulgated by the United States Department of Health and Human Services ("HHS"), as amended from time to time.

## SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as required by law.

b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.

c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

d. Business Associate agrees to report to Provider any use or disclosure of the PHI, of which it becomes aware, and otherwise not provided for by this Agreement.

e. Business Associate shall require its agents and subcontractors that receive PHI from Business Associate or Provider to agree to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.

f. Business Associate agrees to make available and provide right of access to PHI held by the Business Associate that does not merely duplicate the information maintained by the Provider, to Provider at its request, or as directed by Provider, to an Individual. Business Associate shall provide access within reasonable time and manner as specified by Provider.

g. Business Associate agrees to incorporate all amendments or corrections to PHI when notified by the Provider in writing that such information is inaccurate or incomplete. 45 CFR § 164.526

h. Business Associate agrees to make available to the Secretary of HHS (or its designee) all internal practices, books, and records relating to the use and/or disclosure of PHI received from the Provider, for purposes of determining the Provider's compliance with the Privacy Rules, subject to attorney-client and other applicable legal privileges.

i. Business Associate agrees to provide an accounting of such disclosures of PHI to Provider or, as directed by Provider, to an Individual in accordance with 45 CFR § 164.528, as amended from time to time. Business Associate shall provide such accounting within a reasonable time and manner as specified by the Provider.

## 2.1 PERMITTED USES AND DISCLOSURES OF PHI BY BUSINESS ASSOCIATE

a. Business Associate, its agents and employees, may use or disclose PHI as necessary to perform its duties under the Business Arrangement and only as allowed by the terms of the Business Arrangement, this Agreement, or as required or allowed by law.

b. Business Associate may also use and/or disclose PHI as necessary for the proper management and administration of Business Associate, and to carry out the legal responsibilities of Business Associate.

c. Business Associate agrees that it will not use or disclose PHI in a manner that violates or would violate the Privacy Rules, or the minimum necessary policies and procedures of the Provider that are communicated to Business Associate.

d. Business Associate may use PHI to report violations of the law to appropriate Federal and State authorities, consistent with 45 CFR § 164.502(j)(1).

## SECTION III – OBLIGATIONS OF THE PROVIDER

a. Provider shall notify Business Associate of any limitation(s) in the Provider's notice of privacy practices in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of PHI.

b. Provider shall notify Business Associate, in writing and in a timely manner, of any restrictions or other arrangement to which the Provider has agreed with an individual in accordance with 45 CFR § 164.522, to the extent that such changes may affect Business Associate's use or disclosure of PHI hereunder; provided however, that the Provider will not agree to, and Business Associate will not be required to comply with, any restriction that is inconsistent with the purpose or terms of the Business Arrangement.

## 3.1 PERMISSIBLE REQUESTS BY PROVIDER

Provider shall not request Business Associate to use and/or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Provider; provided however, that the Business Associate will use or disclose PHI for management and administrative activities of the Business Associate as outlined in Section 2.1.

## SECTION IV – TERM AND TERMINATION

### 4.1 TERM AND TERMINATION

This Agreement shall remain in effect for the entire term of the Business Arrangement, or until terminated as set forth herein.  This Agreement will automatically terminate without further action of the parties upon the termination or expiration of the Business Arrangement, subject to the following:

The Provider acknowledges and agrees that, due to the nature of the Business Arrangement, the Business Associate must have the ability to receive PHI from the Provider for as long as the Business Arrangement is in place, and that the Business Associate must have the ability to receive PHI from the Provider for the duration of any defense obligations arising under the Business Arrangement.  Thus, the Provider acknowledges and agrees that termination of this Agreement is not feasible as long as the Business Arrangement is in place, or as long as Business Associate has any defense obligations arising under the Business Arrangement.  Accordingly, any other provision in this Agreement notwithstanding, the parties agree that (a) any notice of termination of this Agreement will also serve as notice of termination of the Business Arrangement, (b) the termination of this Agreement will under no circumstances be effective until the termination of the Business Arrangement is effective, and (c) this Agreement may not be terminated and will remain in effect as long as Business Associate has any defense obligations arising under the Business Arrangement.

### 4.2 TERMINATION FOR MATERIAL BREACH

Subject to Section 4.1, upon Provider's knowledge of a material breach by Business Associate, Provider shall either:

    a.  Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Business Arrangement if Business Associate does not cure the breach or end the violation within a reasonable time specified by the Provider;

    b.  Immediately terminate this Agreement and the Business Arrangement if the Business Associate has breached a material term of this Agreement and cure is not possible; or

    c.  If neither termination nor cure is feasible, Provider shall report the violation to the Secretary of HHS.

### 4.3 RETURN/DESTRUCTION OF PHI

Except as provided in Section 4.4, upon termination of the Business Arrangement (and any ongoing defense obligations, if applicable), for any reason, Business Associate will, if feasible, return or destroy PHI received from, or created or received by it on behalf of the Provider that Business Associate maintains in any form, including any backup tapes.  Business Associate shall retain no copies of such information.  Business Associate further agrees to use its best efforts to recover PHI in the possession of subcontractors or agents.

### 4.4 NO FEASIBLE OR PRACTICAL RETURN/DESTRUCTION OF PHI

Business Associate has determined that returning or destroying PHI is infeasible for ongoing defense obligations (if applicable), state regulatory requirements imposed upon professional liability insurers, such as reporting, review, and audit requirements, and carrying out any necessary business responsibility of the Business Associate.  This serves as Business Associate's notification to Provider of the conditions that make return or destruction infeasible.  Business Associate shall extend the protections of this Agreement to such PHI and limit further uses and disclosures of such

PHI to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such PHI.

**SECTION V – MISCELLANEOUS**

a. Regulatory References – A reference in this Agreement to a section of the Privacy Rule means the section as in effect or as amended.

b. Amendment – The parties recognize that this Agreement may need to be modified from time to time and agree to take such action as is necessary to amend this Agreement for Provider to comply with federal and state law including, but not limited to the requirements of the Privacy Rule and HIPAA.

c. Survival – The respective rights and obligations of Business Associate under Section 4.3 of this Agreement shall survive the termination of this Agreement.

d. Notices – All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the party's regular business address. All notices and other communications shall be sent by overnight courier or sent by registered or certified mail, return receipt requested.

e. Interpretation – Any ambiguity in this Agreement shall be resolved to permit Provider to comply with HIPAA and the Privacy Rules.

BUSINESS ASSOCIATE:

Signed:

John Gerdts
Senior Vice President
RSUI Group, Inc.

Address for Notice:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326-1160

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# DIRECT PATIENT CARE EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS - BROAD**

It is agreed that coverage under this policy shall not apply to any **Direct Patient Care** services.

For the purposes of this exclusion, **Direct Patient Care** is defined as:

1. Medical, surgical, dental, nursing, chiropractic or mental health examination or treatment to any person, including the furnishing of food or beverages in connection therewith; or

2. Furnishing or dispensing of drugs or medical, surgical, dental or chiropractic supplies or appliances; or

3. Handling of or performing post-mortem examinations on human bodies; or

4. Services by any person as a member of a formal accreditation or similar professional board or committee of the Named Insured, or as a person charged with the duty of executing directives of any such board or committee.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     6/1/2017
Forms part of Policy Number     LHM763897
Issued to     INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by    Landmark American Insurance Company

Endorsement No.:     01

RSG 56025 1009

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS - BROAD**

In the event of cancellation of this policy by the Insured, return premium shall be computed at .90 of the pro rata unearned policy premium, subject however to a retention by the company of not less than $1,700.00.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the coverage form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non payment of premium or deductible, subject however to retention by the company of the minimum retained premium as shown above.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     6/1/2017
Forms part of Policy Number    LHM763897
Issued to    INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by    Landmark American Insurance Company
                                    Endorsement No.:     02

LANDMARK AMERICAN INSURANCE COMPANY

## *IMPORTANT NOTICE*

### NEW JERSEY SURPLUS LINES DISCLOSURE NOTICE

**This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.**

<div align="right">**LANDMARK AMERICAN INSURANCE COMPANY**</div>

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS - BROAD**

**This policy does not apply;**

a.   **Under any Liability Coverage,** to bodily injury or property damage;

 (1)   with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Associates of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

 (2)   resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b.   **Under any Medical Payments Coverage** or any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c.   **Under any Liability Coverage** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

 (1)   the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

 (2)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

 (3)   the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d.   **As used in this Endorsement:**

 (1)   "Hazardous properties" include radioactive, toxic, or explosive properties;

 (2)   "Nuclear material" means source material, special nuclear material or byproduct material;

 (3)   "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

 (4)   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor,

This endorsement effective      6/1/2017
Forms part of Policy Number    LHM763897
Issued to     INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by      Landmark American Insurance Company
<div align="center">Endorsement No.:      04</div>

<div align="right"></div>

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means:

(a) any nuclear reactor;

(b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste;

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PRODUCTS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, the insurance provided by this policy does not apply to any **Claim** or **Claim Expenses** for liability arising out of general liability or liability for goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     6/1/2017
Forms part of Policy Number    LHM763897
Issued to     INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by    Landmark American Insurance Company

Endorsement No.:     05

RSG 56099 0405

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America.  Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of  this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain unchanged

This endorsement effective     6/1/2017
Forms part of Policy Number    LHM763897
Issued to    INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by    Landmark American Insurance Company

Endorsement No.:     06

RSG 94022 0407

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SPECIFIC CLAIM EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS - BROAD**

In consideration of the premium charged, it is agreed that this policy will not apply to any **Claims** and/or **Claims Expenses** for or arising out of the facts and/or circumstances, directly or indirectly from or in consequence of, or in any way involving:  Anthony Polit; Zyppah, Inc..

This endorsement effective    6/1/2017
Forms part of Policy Number   LHM763897
Issued to    INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by    Landmark American Insurance Company

Endorsement No.:    07

RSG 56137 0416

## State Fraud Statements
## Fraud Statements – Signature Required for New York Only

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form.  Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

A member of Alleghany Insurance Holdings LLC

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.


## SIGNATURE REQUIRED

## NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____

Insured/Applicant/Claimant

_____

By (Authorized Representative)

_____

Title

_____

Date

A member of Alleghany Insurance Holdings LLC

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# VIOLATION OF CONSUMER PROTECTION LAWS EXCLUSION

This endorsement modifies insurance provided under the following:

**MEDICAL PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS - BROAD**

This insurance does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of consumer protection laws including, but not limited to, the following:

1.  The False Claims Act (FCA), including any amendment of or addition to such law;

2.  The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), including any amendment of or addition to such law;

3.  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);

4.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

5.  The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment of or addition to such law;

6.  Any federal, state or local statute, ordinance or regulation that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information;

7.  Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices, including claims asserted under the common law; or

8.  **Claims** brought by any state or federal government agency, or any person or entity on their behalf, including qui tam **claims**, seeking to enforce any consumer protection law.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    6/1/2017
Forms part of Policy Number    LHM763897
Issued to    INTERNATIONAL ACADEMY OF SLEEP/DENTAL SLEEP MASTERS/BGAW MANAGEMENT
by    Landmark American Insurance Company

Endorsement No.:    09

RSG 56121 0216

| RSUI Group, Inc.<br>945 East Paces Ferry Road, Suite 1800<br>Atlanta, GA  30326-1160 | APPLICATION FOR MISCELLANEOUS<br>MEDICAL LIABILITY INSURANCE<br>(CLAIMS-MADE FORM) |
|---|---|

**General Applicant Information**

1. Name of Applicant:  International Academy of Sleep/Dental Sleep Masters/BGAW Management

2. Principal Address:2400 Morris Ave Suite 202

3. City:Union                    County:union                    State:NJ                    Zip Code:07083

4. Phone:908258-341                              Website Address:iaosleep.org

5. a. Does the Applicant practice as:     X☐Corporation     ☐Partnership     ☐Individual     ☐Prof. Association

   ☐Other:

   b. In what states is the applicant registered and licensed to practice?     ALL

6. Date Applicant was established:     07   / 01   /   2014
   MM     DD     YY

7. Is the firm engaged in, owned by, associated with or controlled by any other business?     no

   If yes, give details

8. PROFESSIONAL ACTIVITIES AND SPECIALTY (Attach narrative description if necessary)

   ☐   Health Maintenance Organization           ☐   Residential Healthcare Facility

   ☐   Home Healthcare Agency                    ☐   Other (Specify)     Coaching and Mentoring dentists

   ☐   Medical/Testing Laboratory                in the world of sleep apnea

   ☐   Nurse's Registry

   ☐   Out-Patient Clinic

9. State approximate division of applicant's patients among:

   a. Alcoholics               (_____)%        h. Holistic Medicine    (_____)%        n. Research or Experimental  (_____)%

   b. Counseling /
      Family Planning          (_____)%        i. Medical              (_____)%        o. Senile or Aged            (_____)%

   c. Communicable             (_____)%        j. Mentally Retarded    (_____)%        p. Stress Testing            (_____)%

   d. Dental                   ( 100 )%         k. Obstetrical          (_____)%        q. Surgical                  (_____)%

   e. Drug Addicts             (_____)%        l. Pediatric            (_____)%        r. Tubercular                (_____)%

   f. General                  (_____)%        m. Psychiatric          (_____)%        s. Other_____               (_____)%

   g. Hemodialysis             (_____)%

RSG 50026 0209

10. a. List the number and type of applicant's employees and volunteers: If None, State None. ___1___

| Number | Type of Profession | Number | Type of Profession |
|---|---|---|---|
| 1) _____ | Inhalation Therapists | 9) _____ | Perfusionists |
| 2) _____ | Laboratory Technicians | 10) _____ | Pharmacists |
| 3) _____ | Nurse Anesthetists | 11) _____ | Physicians – Minor Surgery |
| 4) _____ | Nurses, Licensed Practical | 12) _____ | Physicians – No Surgery |
| 5) _____ | Nurse Practitioner | 13) _____ | Physiotherapists |
| 6) _____ | Nurses Registered | 14) _____ | Social Workers |
| 7) _____ | Opticians | 15) _____ | Speech Therapists |
| 8) _____ | Optometrists | 16) _____ | Other |

b. List the number and type of independent contractors who provide professional services on behalf of the applicant.

If None, State None.    none _____

_____

c. Are all the above individuals licensed in accordance with applicable state and federal regulations?     Yes  X☐   No ☐

ATTACH DETAILED EXPLANATION FOR ANY "YES" ANSWERS:

Has the applicant or have any of the above employees:

1) Ever been the subject of disciplinary or investigative proceedings or reprimand by a governmental or administrative agency, hospital or professional association?     Yes ☐  No X ☐

2) Ever been convicted for an act committed in violation of any law or ordinance other than traffic offenses?     Yes ☐  No X ☐

3) Ever been treated for alcoholism or drug addiction?     Yes ☐  No X ☐

4) Ever had any state professional license or license to prescribe or dispense narcotics refused, suspended, revoked, renewal refused or accepted only on special terms or ever voluntarily surrendered same?     Yes ☐  No X ☐

11. Does the applicant perform:

a. Acupuncture or acupuncture anesthesia? Explain: _____     Yes ☐  No X ☐

b. Angiography/Arteriography/Venography? Describe: _____     Yes ☐  No X ☐

c. Catheterization (other than urinary or umbilical)? Describe: _____     Yes ☐  No X ☐

d. Closed reduction of compound fractures and/or normal deliveries and/or dermabrasion?     Yes ☐  No X ☐

e. Injection of radioisotopes and/or use of irradiated substances? Describe: _____     Yes ☐  No X ☐

f. Radiation Therapy and/or Chemotherapy? Describe: _____     Yes ☐  No X ☐

g. Psychiatric shock therapy?     Yes ☐  No X ☐

h. Silicone Injections? Describe. _____     Yes ☐  No X ☐

i. Spinal Anesthesia (other than saddle blocks or caudals)? _____     Yes ☐  No X ☐

j. Laser Treatment? Describe: _____     Yes ☐  No X ☐

12. Does the applicant perform any:

    a. Surgery other than incision of superficial boils or suturing superficial fascia? — Yes ☐ No X ☐

    b. Circumcisions and/or dilation and curettage and/or insertion of temporary pacemakers? — Yes ☐ No X ☐

    c. Tonsillectomies and/or Adenoidectomies and/or Caesarean Sections? — Yes ☐ No X ☐

    d. Cosmetic Plastic Surgery? Describe: _____ — Yes ☐ No X ☐

    e. Excision of large cysts and/or I&D of deep-seated boils or carbuncles? — Yes ☐ No X ☐

    f. Hysterectomies? — Yes ☐ No X ☐

    g. Open reduction of fractures? Describe: _____ — Yes ☐ No X ☐

    h. Surgery for weight reduction of patients? — Yes ☐ No X ☐
    i. Abortions and/or menstrual extractions? Describe (include trimester, method and number of Abortions performed per month): _____ — Yes ☐ No X ☐

    j. Silicone Implants? Describe: _____ — Yes ☐ No X ☐

    k. Sterilization Procedures? Describe: _____ — Yes ☐ No X ☐

    l. Biopsies and/or endoscopies? List types performed: _____ — Yes ☐ No X ☐

    m. Sex change operations? Describe and advise the number performed per year: — Yes ☐ No X ☐

_____

    n. Other Surgery? Describe: _____ — Yes ☐ No ☐

13. Does the applicant perform hospital emergency room care?

    a. For its own regular patients? — Yes ☐ No X ☐

    b. For patients not its own? — Yes ☐ No X ☐

    c. If answer to b. is yes, please specify: the percentage of its time devoted to this work = (_____)%, the number of hours per month devoted to this work = (_____) hrs.

14. Does the applicant use drugs for weight reduction patients? — Yes ☐ No X ☐
If yes, on last page list drugs used and advise: percent of practice devoted to weight reduction, frequency and duration of prescriptions for weight reduction drugs and quantity dispensed by applicant?

15. Does the applicant administer any methadone treatment? — Yes ☐ No X ☐
If yes, describe treatment and controls used and indicate number of treatments during last 12 months (_____), next 12 months (_____).

16. Is anesthesia (other than topical or by means of local infiltration) administered by either applicant or others? — Yes ☐ No X ☐

    If yes, attached detailed explanation.

17. Does the applicant maintain any beds for overnight occupancy? — Yes ☐ No X ☐

    If yes, total number: _____

18. State number of X-ray machines owned or operated and whether they are used for diagnosis or treatment or both.

    State by whom treatment is given and number of procedures: _____

19. Does the applicant own (wholly or in part), operate or administer any hospital, nursing home or other institution where medical services are customarily rendered?  Yes ☐  No X ☐

   If yes, give details, including name, location, size and number of beds.  _____

20. State sources and amounts of total revenue:

| Source | | Amount Last Policy Year | Est. Amount This Policy Year |
|---|---|---|---|
| a. | Charitable Contributions | $ _____ | $ _____ |
| b. | Government Funding | $ _____ | $ _____ |
| c. | Fee for Services | $ 2,200,000 | $ _____ |
| d. | _____ | $ _____ | $ _____ |
| e. | _____ | $ _____ | $ _____ |
| | TOTAL GROSS REVENUE: | $ _____ | $ _____ |

21. Number of patient encounters last 12 months (_____0) and/or patient tests carried out (_____).

   (NOTE: "Patient encounters" refers to number of *visits* – not number of patients.)

22. Number of estimated patient encounters next 12 months ( 0 ___ ) and/or patient tests carried out (_____).

   (NOTE: "Patient encounters" refers to number of *visits* – not number of patients.)

23. If applicant has a training school, complete the following.

| Specify profession for which students are being trained | Max. No. of students per session | No. of sessions per year | % of Time involved in clinical setting | Number of students | Qualifications of faculty (eg. MD, RN, PhD) |
|---|---|---|---|---|---|
| Sleep Apnea for dentists | 50 | 16 | 0 | 110 | none |
| | | | | | |

24. If applicant is an ambulance service, please complete the following.

   Number of Ground Ambulances 0          Number of Emergency Calls (per year)      0

   Number of Air Ambulances      0          Number of non-Emergency Calls (per year)  0

   Radius of Services      0

25. Give Professional Liability Coverage for last five years for the firm:

| Carrier | Limit | Deducible | Premium | Expiration (Mo/Day/Yr) |
|---|---|---|---|---|
| none | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

   If expiring insurance is a claims made policy, what is the retroactive date?  _____

RSG 50026 0209

26. Is the applicant currently insured under a Commercial General Liability Policy?   Yes ☐   No☐ X

If yes, please give details:

|  | | Limits | | |
|---|---|---|---|---|
| Limits Insurance Company  Type of Coverage | | | From | To |
| BI | | PD | | |

27. Has any application for Professional Liability Insurance made on behalf of the firm, any predecessors in business or present partners ever been declined or has the insurance ever been cancelled or renewal refused?   Yes ☐ No X ☐

If yes, please give details: _____

28. Has any claim ever been made against the applicant or any persons named in question 1?   Yes X ☐ No ☐

If yes, how many?   1

Please attach currently valued company loss runs for the past 5 years and details stating:
1) Date when claim was made; 2) date the act giving rise to the claim was committed; 3) name of the claimant; 4) nature of the claim; 5) amount involved including reserves; and 6) final disposition

29. Is the applicant aware of any circumstances which may result in any claim against the applicant or any persons named in question 1?   Yes ☐ No X ☐

If yes, how many?   _____

Please attach currently valued company loss runs for the past 5 years and details stating:
1) Date when claim was made; 2) date the act giving rise to the claim was committed; 3) name of the claimant; 4) nature of the claim; 5) amount involved including reserves; and 6) final disposition

30. Has any insurer cancelled or refused to renew any similar insurance during the past five years?   no _____

31. Limits of Liability requested   1,000,000   Deductible   5000

32. Desired term of policy: From   asap   To _____

### Representations

The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part hereof.

This application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made a part of the policy. The undersigned Applicant declares that if the information supplied on this application changes between the dates of this application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

_Avi Weisfogel_  _[signature]_   owner   5-27-17
_____   _____   _____
Signature of the Applicant   Title   Date


_____
Producer



Your policy has been signed on our behalf by our President and by our Secretary and Treasurer. However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Secretary

**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

A member of Alleghany Insurance Holdings LLC

RSG 51029 1114

# EXHIBIT C

LANDMARK AMERICAN INSURANCE COMPANY

## *NEW JERSEY NOTICE*
## *ELECTION OF RETROACTIVE COVERAGE*

### PLEASE READ ALL INFORMATION BEFORE
### RETURNING THIS FORM

**WHAT IS RETROACTIVE COVERAGE?**

Retroactive Coverage provides coverage for acts, errors or omissions that take place after the retroactive date set forth in the claims-made policy. The retroactive date indicates that coverage is provided for acts, errors or omissions that occur on or after the retroactive date but provides no coverage for acts, errors or omissions that occur before the retroactive date, even if the claim is first made during the term of the policy.

**IMPORTANT**

1.   Should you have any questions, please call/contact your insurance agent.

2.   We must receive an executed copy of this Notice/Election before we issue an insurance policy.

3.   This Notice/Election is part of your Application for Insurance and will be incorporated with the Application into the terms and conditions of your insurance policy.

**ELECTION**

I _____ Avi Weisfogel _____ acknowledge that I have read and understand the entirety of this Notice/Election of Retroactive Coverage.

I elect to purchase a claims-made policy with the Retroactive Coverage selected below:

___✓___   Retroactive Coverage starting with the beginning date of the claims-made policy that I am purchasing.

_____   Retroactive Coverage starting on the following date: _____.
An additional premium of $ ____ will be charged for this election.

If you choose Retroactive Coverage starting with the beginning date of the claims-made policy that you are purchasing, please check one of the following:

I choose the Retroactive Coverage shown above for the following reasons:

_____   My current insurance is written on an occurrence basis.

_____   I am entering the practice of _____ at this time.

___✓___   I do not wish to pay an additional premium for coverage for acts, errors or omissions occurring before the beginning of the policy that I am purchasing.

_____   My current insurance is written on a claims-made basis, and I have tail coverage (an extended reporting period) under the current coverage.

_____ *Avi Weisfogel* _____
Signature of Applicant

Title: _____ Owner _____

Dated: _____ 8/10/17 _____