## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, | : | HONORABLE Brian R. Martinotti U.S.D.J. |
| | : | |
| Plaintiff, | | |
| | : | Civil Action. No. 3:18-cv-02204 (BRM) (DEA) |
| v. | : | |
| | : | |
| DENTAL SLEEP MASTERS, LLC, INTERNATIONAL ACADEMY OF SLEEP, LLC, AVI WEISFOGEL, BARRY GLASSMAN, REBECCA PASTOR, REBECCA LAUK, DDS, SAL ARAGONA, DDS, JAY NEUHAUS, DDS, AND ANTHONY BENNARDO, DDS, | : | |
| | : | Return Date: June 4, 2018 |
| | : | Oral Argument Requested |
| | : | (Document Electronically Filed) |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

---

EPSTEIN OSTROVE, LLC
200 Metroplex Drive, Suite 304
Edison, New Jersey, 08817
(732) 828-8600
Attorneys for Defendants

TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ................................................................ 1
II.   STATEMENT OF FACTS ...................................................................... 4
      A.    The Coverage Application. ................................................. 4
      B.    The Insurance Coverage. .................................................. 5
      C.    The Underlying Actions. ................................................... 8
      D.    Plaintiff's Allegations. ...................................................... 9
III.  LEGAL ARGUMENT ......................................................................... 10
      A.    Legal Standard .............................................................. 10
      B.    Plaintiff's Complaint Fails to State a Claim for Rescission ............... 11
            i.    Plaintiff Cannot Establish a Claim for Common Law Recession ................................................................ 11
            ii.   Plaintiff Cannot Establish a Violation of the IFPA ................ 17
      C.    Plaintiff has Waived its Right to Disclaim the Policy ...................... 19
            i.    Plaintiff is Estopped from Denying their Duty to Defend ....... 19
            ii.   Plaintiff Has a Duty to Defend Until the Underlying Actions are Resolved ................................................................ 23
            iii.  Plaintiff Has Relinquished its Right to Disclaim the Policy .... 26
IV.   CONCLUSION .................................................................................. 30

## Cases

*Allstate Ins. Co. v. Altman,*
  191 *N.Y.S.2d* 270 (Sup. Ct. 1959) ................................................................. 20, 21

*Allstate Ins. Co. v. Lopez,*
  325 *N.J. Super.* 268 (Law Div. 1999) ............................................................. 13

*Allstate Ins. Co. v. Meloni,*
  98 *N.J. Super.* 154 (App. Div. 1967) ............................................................. 13

*Ashcroft v. Iqbal,*
  556 *U.S.* 662 (2009) ................................................................................. 10, 11

*Battista v. W. World Ins. Co., Inc.,*
  227 *N.J. Super.* 135 (1988) ........................................................................... 27

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 10

*Bonnet v. Stewart,*
  68 *N.J.* 287 (1975) ........................................................................................ 26

*Burd v. Sussex Mutual Ins. Co.,*
  56 *N.J.* 383 (1970) ........................................................................................ 25

*Chubb Custom Ins. Co. v. Prudential Ins. Co. Of Am.,*
  195 *N.J.* 231 (2008) ...................................................................................... 16

*Danek v. Hommer,*
  28 *N.J. Super.* 68 (App. Div. 1953) .............................................................. 23

*DeMarco v. Stoddard,*
  223 *N.J.* 363 (2015) ................................................................................. 16, 18

*Doto v. Russo,*
  140 *N.J.* 544 (1995) ...................................................................................... 27

*Equitable Life Assur. Soc. v. New Horizons, Inc.,*
  28 N.J. 307 (1958) ........................................................................................ 11

*Ettelson v. Metropolitan Life Ins. Co.,*
  164 F.2d 660 (3rd Cir. 1947) .................................................................... 12

*First Am. Title Ins. Co. v. Lawson,*
  177 N.J. 125 (2003) ................................................................................... 12

*Flomerfelt v. Cardiello,*
  202 N.J. 432 (2010) ................................................................................... 23

*Formosa v. Equitable Life Assurance Soc.,*
  166 N.J. Super. 8 (App. Div. 1979) ........................................................... 11

*Gallagher v. New England Mut. Life Ins. Co. of Boston,*
  19 N.J. 14 (1955) ....................................................................................... 11

*Garman v. Metropolitan Life Ins. Co.,*
  175 F.2d 24 (3 Cir. 1949) .......................................................................... 12

*Griggs v. Bertman,*
  88 N.J.347 (1982) ........................................................................... 19, 20, 27

*Hackensack Water Co. v. General Accident, Fire & Life Assur. Corp.,*
  84 N.J. Super. 479 (App. Div. 1964) ........................................................ 26

*Hartford Ins. Grp. v. Marson Constr. Corp.,*
  186 N.J. Super. 253 (App. Div. 1982) ...................................................... 25

*In re Mercedes-Benz Antitrust Litig.,*
  157 F. Supp. 2d 355 (D.N.J. 2001) ........................................................... 10

*Jackson Township Municipal Utl. Auth. v. Hartford Accident & Indem. Co.,*
  186 N.J. Super. 156 (Law Div. 1982) .................................................. 24, 25

*Jones v. Continental Casualty Co.,*
  123 N.J. Super. 353 (Ch.Div.1973) .......................................................... 26

*Kerpchak v. John Hancock Mut. Ins. Co.,*
  97 N.J.L. 196 (1922) ........................................................................... 13, 17

*Leibling v. Garden State Indem.,*
  337 N.J. Super. 447 (App. Div.) ............................................................... 12

iii

*Mass. Mut. v. Manzo,*
  122 *N.J.* 104 (1991)..................................................................................... 13

*Merchs. Indem. Corp. v. Eggleston,*
  68 *N.J. Super.* 235 (App. Div. 1961) ...........................................................passim

*Metropolitan Life Ins. Co. v. Lodzinski,*
  124 N.J. Eq. 357 (E. & A. 1938).................................................................. 12

*Metropolitan Life Ins. Co. v. Tarnowski,*
  130 N.J. Eq. 1 (E. & A. 1941)...................................................................... 11

*N.J. Suburban Water Co. v. Harrison,*
  122 *N.J.L.* 189 (E & A 1939) ...................................................................... 19

*Ohio Cas. Ins. Co. v. Flanagin,*
  44 *N.J.*504 (1965).................................................................................23, 26

*Parker Precision Products Co. v. Metropolitan Life Ins. Co.,*
  407 F.2d 1070 (3rd Cir. 1969) .................................................................... 12

*Redler v. New York Life Ins. Co.,*
  437 F. 2d 41 (3rd Cir. 1971) ....................................................................... 12

*Reliance Ins. Co. v. Armstrong World Industries.,*
  292 *N.J.* 365 (App. Div. 1996)................................................................... 23

*Remsden v. Dependable Ins. Co.,*
  71 *N.J.* 587 (1976)................................................................................3, 12

*Royal Ins. Co. v. Rutgers Cas. Ins. Co.,*
  271 *N.J. Super.* 409 (App. Div. 1994) ........................................................ 16

*Russ v. Metropolitan Life Ins. Co.,*
  112 N.J. Super. 265 (Law Div. 1970) .......................................................... 12

*Sneed v. Concord Insurance Co.,*
  98 *N.J. Super.* 306 (App. Div. 1967) ......................................................28, 29

*Sussex Mut. Ins. Co. v. Hala Cleaners, Inc.,*
  75 *N.J.* 115 (1977)..................................................................................... 19

*Toll Bros., Inc. v. Bd. Of Chosen Freeholders of Burlington*,
194 *N.J.* 223 (2008) ................................................................ 12

*Unger v. Nat'l Residents Matching Program*,
928 *F.2d* 1392 (3d Cir. 1991) ............................................... 10

*Van Der Veen v. Bankers Indemnity Ins. Co.*,
30 *N.J. Super.* 211 (App. Div. 1954) .................................... 26

*Zavala v. Wal-Mart Stores, Inc.*,
393 F. Supp. 2d 295 (D.N.J. 2005) ....................................... 10

**Statutes**

*N.J.S.A.* § 17:33A-49(a)(4)(B) ............................................. 18

*N.J.S.A.* § 17:33A-7 ............................................................. 18

*N.J.S.A.*17:33A-4(a)(4)(B) ................................................... 17

**Rules**

*Fed. R. Civ. P.* 12(b)(6) ............................................... 1, 9, 10

## I.  **PRELIMINARY STATEMENT**

Defendants Dental Sleep Masters LLC, International Academy of Sleep LLC, Avi Weisfogel ("Dr. Weisfogel"), Barry Glassman, Rebecca Pastor, Rebecca Lauk, DDS, Sal Aragona, DDS, Jay Neuhaus, DDS and Anthony Bennardo, DDS (collectively, "Defendants"), respectfully submit this memorandum of law in support of their Motion to Dismiss the Complaint of Plaintiff, Landmark American Insurance Company (the "Plaintiff") in Lieu of an Answer and pursuant to *Fed. R. Civ. P.* 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's Complaint seeks rescission of a contract for insurance Plaintiff agreed to provide Defendants or, in the alternative, receive a declaratory judgment that it owes no duty to defend Defendants in two pending lawsuits in which Plaintiff has already retained counsel. For the reasons set forth below, the Complaint fails to state a claim upon which relief can be granted and, as such, must be dismissed.

On May 26, 2018, Defendants' applied for a claims-made liability policy from Plaintiff.[1] The application (the "Coverage Application") was for liability coverage in connection with Defendants' dental marketing and consulting businesses. Plaintiff reviewed the Coverage Application and agreed to issue a policy on or about June 6, 2017.

---

[1] Because this is a Motion pursuant to *Fed. R. Civ. P.* 12(b)(6) all facts in the Complaint are assumed to be true for purposes of the Motion.

Under the policy issued by Plaintiff (the "Policy"), Plaintiff promised to pay "all sums that the [Defendants] become legally obligated to pay as 'damages' and associated 'claim expenses' arising out of a negligent act, error or omission . . . [or] in the rendering of or failure to render professional services . . . ." Notably, the Policy excludes "Direct Patient Care," defined in part as the "[m]edical, surgical [or] dental . . . examination or treatment to any person."   In other words, the Policy acknowledges that it is to cover something other than those activities to be performed by a licensed dentist.

In June 2017, Defendants' business principal, Dr. Weisfogel, was served with notice of an action filed in California federal court related to a dispute over Defendants' marketing and consulting work (explained and referred to below as the "California Action").   Less than one month later, Dr. Weisfogel was served with a second notice of a lawsuit, this time filed in New Jersey Superior Court, Somerset County (explained and referred to below as the "New Jersey Action").   (The California Action and the New Jersey Action are collectively the "Underlying Actions.")

Upon service of the complaints, Defendants tendered defense to Plaintiff for representation in the Underlying Actions.   Plaintiff admits to presently underwriting the costs of defense in the Underlying Actions for each Defendant named in the instant case.

2

Despite undertaking the defense of the Underlying Actions, Plaintiff has filed the instant action, charging, among other things, that Dr. Weisfogel failed to disclose and/or made deliberate misrepresentations on the Coverage Application in connection with the status of his dental license in the State of New Jersey. Plaintiff now seeks rescission of the Policy, *ab initio*, on the grounds of common law and statutory material misrepresentation. As more fully set forth below, Plaintiff is not entitled to rescission.

New Jersey Law is well settled – a <u>material</u> misrepresentation of fact n an application for insurance justifies rescission <u>only</u> if "the insurer relied upon it to determine whether or not to issue the policy." *Remsden v. Dependable Ins. Co.*, 71 N.J. 587, 589 (1976). Even assuming the facts in the Complaint are true, Plaintiff has not and cannot allege that it relied on the fact that Dr. Weisfogel had a license to practice dentistry when it issued the subject policy. Indeed, the Coverage Application made it clear that the business to be covered was involved in marketing and coaching about marketing. Plaintiff acknowledged that it knew that there were not to be any activities that require a medical license when it include the "Direct Patient Exclusion" as an endorsement to the Policy. Plaintiff must admit that whether Dr. Weisfogel had a license to practice dentistry was wholly irrelevant to the business, to the Coverage Application, and ultimately, to the decision to provide coverage. As such and because the information about Dr. Weisfogel's license was

neither <u>material</u> nor relied upon by Plaintiff, Plaintiff's claim for rescission fails as a matter of well-settled New Jersey Law.

Moreover, principles of equity estop New Jersey insurers from rescinding the Policy when they are in active control of their insured's litigation. Whatever invented authority Plaintiff relies on as a basis to undo the Policy, that legal right, if it existed at all in this case, has long been waived by Plaintiff pursuant to well-defined, controlling New Jersey authorities.

Plaintiff freely admits underwriting Defendants' representation in the two Underlying Actions.  In addition, Plaintiff has not reserved its right to bring the instant action to disclaim the Policy in accordance with New Jersey law.  Plaintiff's Complaint fails state a basis for how Plaintiff is permitted to disclaim coverage for negligence claims, which, as Plaintiffs admit, falls squarely under the terms of the Policy.

Because Plaintiff does not have any right to its claim for rescission and because, as set forth above, has waived any right it may have had to disclaim coverage, the Complaint must be dismissed.

## II.  <u>STATEMENT OF FACTS</u>

### A.  The Coverage Application.

On or about May 27, 2017, Defendants' submitted the Coverage Application. (Dkt. 1, **Exh. A**). The stated purpose of the Coverage Application was to secure a

Policy for "Consulting and Mentoring Dentists in Sleep Apnea." (*Id.* at 1). Defendants' described their "Professional Activities and Specialty," as "[c]oaching and [m]entoring dentists in the world of sleep apnea." (*Id.* at 2).

Defendants gave multiple responses in the Coverage Application that made it clear that their business operated a non-clinical "training school," approved for instruction by non-MD, RN, or PhD qualified individuals. (*Id.* at 4). Defendants also made it clear that the business did not own (wholly or in part), operate or administer any hospital, nursing home or other institution where medical services are customarily rendered. (*Id.*). A total of thirty-one (31) questions on the Coverage Application inquired about whether Defendants' performed certain treatments, procedures and medical tests. (*See Id.*). Defendants' response to each of those questions was "No." (*Id.*).

### B.     The Insurance Coverage.

Defendants' Coverage Application was approved, and Plaintiff issued the Policy to Defendants, effective June 1, 2017 to June 1, 2018, No. *****3897, which provided, *inter alia*, liability insurance for Defendants' consulting practice. (Dkt. No. 1., **Exh. B** at 2). Under the Policy, Plaintiff promised to "pay all sums that the [Defendants] become legally obligated to pay as 'damages' and associated 'claim expenses' arising out of a negligent act, error or omission . . . [or] in the rendering of or failure to render professional services . . . ." (*Id.* at 3). The Policy also imposes

5

upon Plaintiff the "duty to defend any 'claim against an Insured seeking 'damages' to which [the] policy applies, even if the 'claim[s] are groundless, false or fraudulent." (*Id.*).

The Policy goes on to define several key terms, including "claim," "claim expense," and "damages," as follows:

> PART III. DEFINITIONS
>
> C. "Claim" means a written demand for monetary or non-monetary relief received by the insured during the Policy Period, including the service of suit, or the institution of an arbitration proceeding. Additionally, Claims that arise from an incident, occurrence or offense first reported by the insured during the Policy Period and accepted by the Company in accordance with Part IV. A. Notice of Claim will be considered a Claim first made during the Policy Period.
>
> D. "Claim Expense" means expenses incurred by the Company or the Insured with the Company's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered Claims, whether paid by the Company or the Insured with the Company's consent, and includes: (1) Attorney fees; (2) Costs taxed against the insured in any Claim defended by the Company; (3) interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability; (4) The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit and only if said Claims are covered by the policy; (5) Reasonable expenses incurred by the insured at the Company's request other than: 5(a) Loss of earnings; 5(b) Salaries or other compensation paid to the insured or any employee of the insured.
>
> E. "Damages" means: compensatory judgment, award or settlement, including punitive or exemplary damages, except

6

> damages for which insurance is prohibited by law. Damages do not include disputes over fees, deposits, commissions or charges for goods or services.

(*Id.* at 6). Policy Endorsement No. 1, entitled "Direct Patient Exclusion" provides that coverage will not include incidents that arise from the provision of any health care service. It provides, in pertinent part, the following:

DIRECT PATIENT CARE EXCLUSION

It is agreed that coverage under this policy shall not apply to any Direct Patient Care services.

For the purposes of this exclusion, Direct Patient Care is defined as:

(1) Medical, surgical, dental, nursing, chiropractic or mental health examination or treatment to any person, including the furnishing of food or beverages in connection therewith; or

(2) Furnishing or dispensing of drugs or medical, surgical, dental or chiropractic supplies or appliances; or

(3) Handling of or performing post-mortem examinations on human bodies; or

(4) Services by any person as a member of a formal accreditation or similar professional board or committee of the Named insured, or as a person charged with the duty of executing directives of any such board or committee, all other terms and conditions of this policy remain unchanged.

(*Id.* at 16).

## C.        The Underlying Actions.

The California Action, styled as *Nguygen v. Dental Sleep Masters, LLC et al.,* is docketed in the United States District Court of the Central District of California, as Dkt. No. 8:17-cv-00732-DOC-DFM (the "California Action").  Of the Defendants named in the instant Complaint, the California Action names only: Dental Sleep Masters, LLC, International Academy of Sleep, Dr. Weisfogel and Dr. Barry Glassman.  While the complaint was filed on April 21, 2017, the defendants named in that action were not served until on or about June 9, 2017. (California Action, Dkt. 16).

The California Action stems from a series of alleged "misrepresentations," in addition to accusations amounting to allegations of a failure to render services related to contracted "training and business-related services to dentists pertaining to sleep apnea and other sleep disorders." (California Action, Dkt. 1).  Among other things, the California plaintiffs have alleged a continuing failure to deliver certain specialized training sessions, that were to be devoted, in part, to explaining how to market services for sleep apnea patients.  (*Id.*).  Plaintiff agreed to retain counsel on Defendants' behalf in the California Action.  Retained counsel filed an Answer on August 25, 2017 and subsequently moved to compel arbitration—an application that was subsequently denied by the Court. (California Action, Dkt. Nos., 44, 55).

The complaint filed in the New Jersey Action is styled as *Shore Sleep Dental Care, LLC v. Dental Sleep Masters, LLC et al.*, and was filed on or about July 14, 2017 in New Jersey Superior Court, Law Division, Somerset County, Dkt. No. L-00891-17. (the "New Jersey Action"). The New Jersey Action alleges a factual basis that is substantially similar to the California Action. *(See Id.)*. Since the New Jersey Action was filed and until today, Plaintiff has assumed control over the New Jersey Action on behalf of all Defendants by retaining counsel and by directing that retained counsel provide defense in the New Jersey Action.

### D.        Plaintiff's Allegations.

Plaintiff's core assertion in the instant Complaint is that Defendants "knowingly concealed relevant and material information and provided false and incomplete information to Landmark in order to induce Landmark to issue the Landmark Policy to Defendants." (Dkt. 1 at ¶ 20). Plaintiff's Complaint alleges Dr. Weisfogel misrepresented that he was "licensed in accordance with applicable state and federal regulations," despite having voluntarily retired his license to practice dentistry in 2014. (*Id.* at ¶ 21). Plaintiff, among other things, has also alleged Dr. Weisfogel's purported misrepresentations, including the suggestion that he was never "the subject of a disciplinary proceeding or reprimand by a governmental or administrative agency," wrongfully induced Plaintiff to issue the Policy. (*Id.* at ¶ 23).

### III.   LEGAL ARGUMENT

#### A.   Legal Standard

A claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) where it appears that the plaintiff is not entitled to relief under any set of facts that could be proved consistent with the allegations in the complaint. *In re Mercedes-Benz Antitrust Litig.,* 157 F. Supp. 2d 355, 359 (D.N.J. 2001); *see also Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392 (3d Cir. 1991). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation is to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and quotations omitted); *see also e.g., Zavala v. Wal-Mart Stores, Inc., 393* F. Supp. 2d *295* (D.N.J. 2005) ("While a court will accept well-pled allegations as true for purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of actual allegations.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "legal conclusions," "[t]hreadbare recitals of the elements of a cause of

action," "bare assertions," and "conclusory," allegations are "not entitled to be assumed true" and are insufficient to state a claim upon which relief can be granted. *Id.* at 678, 681.

In this case, Plaintiff's Complaint fails to meet these standards and consists of incorrect allegations of fact and conclusions of law, that even if true, cannot not meet the requirements necessary to rescind the Policy. As such, and discussed herein, the Complaint should be dismissed with prejudice, and without leave to amend.

### B.     Plaintiff's Complaint Fails to State a Claim for Rescission

   i.  Plaintiff Cannot Establish a Claim for Common Law Recession

Count One of Plaintiff's Complaint alleges the Policy "was obtained by fraud." (Dkt. No. 1, at ¶¶ 43, 44.) Based on those alleged misrepresentations, Plaintiff seeks "to rescind the Landmark Policy *ab initio*" and requests "reimbursement and/or restitution for the amount of the defense costs it has paid or will pay on behalf of Defendants." (Dkt. No. 1, at ¶¶ 43, 44.)

Under New Jersey law, actions to rescind an insurance Policy on the basis of an insured's pre-loss misrepresentations are analyzed under the principles of equitable fraud. *See e.g., Formosa v. Equitable Life Assurance Soc.,* 166 N.J. Super. 8 (App. Div. 1979).[2] "Rescission [is an equitable remedy that] voids the contract *ab*

---

[2] (citing *Equitable Life Assur. Soc. v. New Horizons, Inc.*, 28 N.J. 307, 312-313 (1958); *Gallagher v. New England Mut. Life Ins. Co. of Boston*, 19 N.J. 14, 20 (1955); *Metropolitan Life Ins. Co. v. Tarnowski*, 130 N.J. Eq. 1, 3 (E. & A. 1941); *Metropolitan Life Ins. Co. v. Lodzinski*, 124 N.J. Eq.

*initio,* meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose." *First Am. Title Ins. Co. v. Lawson,* 177 N.J. 125, 137 (2003) (quoting *Black's Law Dictionary* 15688 (7th ed. 1999)). New Jersey Courts have held, "the law is well settled that equitable fraud provides a basis" for rescission of a Policy. *Id.*

A claim for equitable fraud requires "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other part." *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington,* 194 N.J. 223, 254 (2008) (quoting *Leibling v. Garden State Indem.,* 337 N.J. Super. 447 (App. Div.), *certif. denied,* 169 N.J. 606, 782 (2001)).

A material misrepresentation of a fact in an application for insurance justifies rescission only if "the insurer relied upon it to determine whether or not to issue the policy." *Remsden v. Dependable Ins. Co.,* 71 N.J. 587, 589 (1976). Thus, to support rescission of an insurance policy, the insurer, must have actually, reasonably, and detrimentally relied on the alleged misrepresentations when deciding whether to

---

357, 359 (E. & A. 1938); *Russ v. Metropolitan Life Ins. Co.,* 112 N.J. Super. 265, 274 (Law Div. 1970) . . . *Redler v. New York Life Ins. Co.,* 437 F.2d 41 (3rd Cir. 1971); *Parker Precision Products Co. v. Metropolitan Life Ins. Co.,* 407 F.2d 1070, 1073 (3rd Cir. 1969); *Garman v. Metropolitan Life Ins. Co.,* 175 F.2d 24, 26 (3 Cir. 1949); *Ettelson v. Metropolitan Life Ins. Co.,* 164 F.2d 660, 663, 664-665 (3rd Cir. 1947)).

provide coverage. *Allstate Ins. Co. v. Lopez,* 325 N.J. Super. 268 (Law Div. 1999) (quoting *Mass. Mut. v. Manzo,* 122 N.J. 104, 115 (1991)).

An insured's misrepresentation supports the forfeiture of their rights under the policy only if it is "untruthful, *material to the particular risk* assumed by the insurer, and actually and reasonably relied upon by the insurer in the issuance of the policy." *First Am.* at 137 (quoting *Allstate Ins. Co. v. Meloni,* 98 N.J. Super. 154, 158-59 (App. Div. 1967)) (Emphasis added.). A misrepresentation is material if it "naturally and reasonably influence[s] the judgment of the underwriter in making the contract at all, or if in estimating the degree or character of the risk, or in fixing the rate of premiums." *Mass. Mut.* 122 N.J. 104 at 115 (quoting *Kerpchak v. John Hancock Mut. Ins. Co.,* 97 N.J.L. 196, 198 (1922)).

Here, Plaintiff cannot establish the alleged misrepresentations contained in the Coverage Application were material to the Policy it issued, and Plaintiff cannot, therefore, establish as a matter of law, the elements necessary to be awarded the drastic remedy of rescission.   In particular, Plaintiff has not pled the alleged misrepresentations made by Dr. Weisfogel materially affected Plaintiff's estimation of the assumed, nor actual risk, covered under the terms of the Policy.

Plaintiff alleges no actual, reasonable, nor detrimental reliance on the allegedly "material misrepresentations."   Rather, Plaintiff's Complaint simply recites the elements, stating that Dr. Weisfogel "knowingly concealed relevant and

13

material information and provided false and incomplete information to Landmark in order to induce Landmark to issue the Landmark Policy to Defendants." (Dkt. No. 1, at ¶ 20). The Complaint purports that Dr. Weisfogel misrepresented that he was "licensed in accordance with applicable state and federal regulations," despite having voluntarily retired his license to practice dentistry in 2014. (*Id.* at ¶ 21). Plaintiff also alleges Dr. Weisfogel misrepresented "[e]ver be[ing] the subject of a disciplinary proceeding[] or reprimanded by a governmental or administrative agency." (*Id.* at ¶ 23, 33).

Notwithstanding that which is alleged by Plaintiff, whether Dr. Weisfogel was a licensed dentist is immaterial to an insurance company's assessment of the assumed and actual risk covered by the Policy which, by its terms, explicitly excludes coverage for medical treatments and procedures.  As the Coverage Application makes plain, the Defendants did not apply for professional malpractice coverage as a medical provider.  Nor does the insurance provided cover activities that require any kind of professional license.

Defendants, instead sought coverage for their business, noting on the first page of the application, that their "Professional Activities and Specialty," (Dkt. No. 1, at **Exh. A**) involved "[c]oaching and [m]entoring [to] dentists in the world of sleep apnea." (*Id.*).  Defendants indicated, in response to Question 23, that "if the applicant has a *training school . .*" and if so, it asked Dr. Weisfogel, to "Specify [the]

14

profession for which students are being trained" and the "Qualifications of the faculty." (*Id.* at 4.). Dr. Weisfogel, in response, answered affirmatively, noting that the training related to "Sleep Apnea for dentists," and that the instructing facility did not require "qualifications" such as "(e.g., MD, RN, PhD)." (*Id.*)

Indeed, Defendants took every opportunity to state their business was not engaged in the diagnosis, treatment or prevention of any disease or condition.[3]  For example, the Coverage Application asked whether the applicant took part in any one of thirty-one (31) specific treatments, procedures and medical tests described throughout the Coverage Application. Defendants' answered "No" to each one. (*See Id.*).

Particularly illuminating on this score are Questions 19 and 21.  Question 19, asked whether Defendants ". . . . own (wholly or in part), operate or administer any hospital, nursing home or other institution where *medical services are customarily*

---

[3] The language of the Policy itself explicitly disclaims coverage for "Direct Patient Services," stating that

> "[I]t is agreed that coverage under this policy shall not apply to any Direct Patient Care Services," defined as, among other things, any "medical, surgical, dental, nursing, chiropractic or mental health examination or treatment to any person, including the furnishing of food or beverages in connection therewith," the "[f]urnishing or dispensing of drugs or medical, surgical, dental or chiropractic supplies or appliances" or "[s]ervices by any person as a member of a formal accreditation or similar professional board or committee of the Named Insured, or as a person charged with the duty of executive directives of any such board or committee."

(Dkt. No. 1 at **Exh. B** at 6).

rendered." (*Id.* at 3) (Emphasis added.). Defendants in response, marked "No" by checking the appropriate box next to the question. Question 21 asked Defendants to list the "[n]umber of patient encounters [over the] last 12 months . . ." Dr. Weisfogel reported the number was "0." (*Id.*).

Here, "as with any contract, construing insurance policies requires a broad search for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.,* 271 N.J. Super. 409, 416 (App. Div. 1994). The plain language of the Coverage Application, when read in conjunction with terms of the Policy, provides the "most direct route" in discerning the decidedly non-medical purpose for which coverage was sought and ultimately provided. *See Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.,* 195 N.J. 231, 238 (2008).

"A policy will be issued following an analysis of the risk to be assumed. A misrepresentation of a material fact in an application undermines the risk assessment and ultimately the decision to provide coverage by an insurer." *DeMarco v. Stoddard,* 223 N.J. 363, 378 (2015). Here, the analysis of risk underlying Policy was wholly unrelated to Dr. Weisfogel's professional licensing or medical qualifications. Defendants' non-disclosure of those facts in the Coverage Application did not undermine the risk of covering a commercial training program

16

marketed to dentists.   If the alleged "misrepresentations" altered the Plaintiff's assessment of risk, then Plaintiff has failed to allege how or in what way.

Accordingly, the relationship between the alleged misrepresentations contained in the Coverage Application and the decision to issue the Policy, renders the misstatements and/or omissions immaterial to the express purpose of extending commercial coverage to Defendants. Given that the Policy excludes medical treatment, it is difficult to conceive how Plaintiff's risk assessment or decision to issue the Policy would be different had Plaintiff known of Dr. Weisfogel's professional licensing or medical qualifications at the time.   For these reasons, Defendants' purported misrepresentations, therefore, cannot be said, as a matter of law, to have "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." *See Kerpchak*, 97 N.J.L. at 198.

ii.   Plaintiff Cannot Establish a Violation of the IFPA

In addition to Plaintiff's common law cause of action for material misrepresentation, Plaintiff is also seeking rescission pursuant to an alleged violation of Insurance Fraud Prevention Act (the "IFPA").   In particular, Plaintiff has asserted a violation of *N.J.S.A.* 17:33A-4(a)(4)(B), which provides that it is a violation of the IFPA if anyone "[p]repares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining . . . a

17

policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to a Coverage Application or contract." *N.J.S.A.* § 17:33A-49(a)(4)(B).

The IFPA authorizes anyone "damaged as the result of a violation of any provision of this act . . . to sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorney's fees." *N.J.S.A.* § 17:33A-7. Nevertheless, the IFPA, like the common law action described above, includes the requirement that plaintiff establish that the misrepresentation constituted a "thing material to an Coverage Application . . . ." *See N.J.S.A.* § 17:33A-49(a)(4)(B).

Accordingly, and as set forth in great detail above, the analysis of risk assumed under the Policy in this case, was wholly immaterial to Dr. Weisfogel's professional licensing or medical qualifications. Given that a "policy, will be issued following an analysis of the risk to be assumed," Plaintiff has failed to allege how it is plausible that the alleged misrepresentations were indeed "material [to] a fact in an [that cause the impairment of] the[ir] risk assessment and ultimately the decision to provide coverage by an insurer." *DeMarco*, 223 N.J. at 378.

For the foregoing reasons, Plaintiff cannot state a claim upon which relief can be granted under either the common law action for rescission or a violation the IFPA. Therefore, Counts I and II must be dismissed as a matter of law.

18

### C.    Plaintiff has Waived its Right to Disclaim the Policy

    i.    Plaintiff is Estopped from Denying their Duty to Defend

The equitable principle of estoppel operates to prohibit a party from "repudiating an act done or position assumed where that course of would work injustice to another who, having a right to do so, has relied thereon." *N.J. Suburban Water Co. v. Harrison*, 122 N.J.L. 189, 194 (E & A 1939). When applying the concepts of equitable estoppel to insurer disclaimer actions, the New Jersey Supreme Court has concluded that "once a carrier undertakes to defend, it is estopped from deny[ing] coverage." *Sussex Mut. Ins. Co. v. Hala Cleaners, Inc.*, 75 N.J. 115, 126 (1977).

An insurance company is typically entitled under the policy to control the defense of a claim covered under the terms of its policy. *Merchs. Indem. Corp.*, 68 N.J. Super. at 256. When such control is exercised by the insurer, the insureds are prevented from hiring their own attorney and directing the course of their defense. *Griggs v. Bertman*, 88 N.J. 347, 356-57 (1982) (holding that the insured party is "effectively precluded from acting in its own interest under the policy.").

The court will apply the equitable principle of estoppel to prevent harm that follow an insurer's immediate withdrawal of coverage once it has actively assumed the defense. By taking control of the litigation under the terms of the policy, an insurer signals to the insured that they can "rely upon the carrier to protect it under

its policy and to be responsible for any judgment against it." *See Merchs. Indem. Corp.*, 68 N.J. Super. at 256.

The rationale behind the estoppel rule in this context was clarified in *Griggs*, 88 N.J. at 357-58. There, the Court explained:

> . . . . that once the insurer has acknowledged the claim and assumes control of the defense, the insured is justified in relying upon the carrier to protect it under its policy and to be responsible for any judgment against it. The insured's justifiable reliance arises from the insurer's contractual right to control the defense under the policy. In assuming this contractual right of control, the insurer preempts its insured from defending itself. If the insurer could later repudiate its responsibility and ultimate liability under the policy, it would in effect have left its insured defenseless or seriously hampered in its ability to protect itself. That resultant inequity is a necessary ingredient of an estoppel.

Similarly, in *Merchants* the New Jersey Appellate Division, cited approving to a New York Supreme Court ruling in in the matter of *Allstate Ins. Co. v. Altman,* 191 N.Y.S.2d 270 (Sup. Ct. 1959), for the "sound presumption of prejudice to the insured," after an insurer withdraws its defense of the insured and seeks to disclaim the policy. In *Altman*, the insurance company, "without reservation, investigated [an accident involving a named insured], prepared pleadings, and participated in trial proceedings." *Id.* Two-months later, "the insurer attempted to assert cancellation [of the policy]." *Id.* The court held "that the cancellation had been waived, and the carrier was estopped from alleging non-coverage of the accident." *Id.*

20

The *Altman C*ourt pronounced that "any other result would be inequitable to the defendant who must be presumed to have been prejudiced by plaintiff's conduct in undertaking the exclusive control of the investigation of the claim and later of the defense of the action in accordance with the terms of the policy . . ." With this rule as guidance, the *Merchants* court, held that

> when an insurer has full knowledge of all facts giving rise to possible rights of disclaimer before commencement of the primary action against the insured, but nevertheless assumes command of that action without reservation of rights and proceeds to file all necessary pleadings and to engage in discovery maneuvers, it has embarked on a firm commitment which must reasonably be construed as a waiver of those rights.

*Merchs. Indem. Corp.,* 68 N.J. Super. at 256.   Whatever invented authority Plaintiff relies on as a basis to undo the Policy in this case, that legal right, if it existed at all, has long been waived under well-defined and controlling New Jersey authorities.

Plaintiff freely admits underwriting Defendants' representation in the two Underlying Actions. (Dkt. No. 1, at ¶ 57). The New Jersey Action was filed on July 14, 2017, and since that time, Plaintiff directed its defense, including, among other things, the strategic decision-making usually reserved for the party him/herself, the preparation and submission of a stipulation extending time to Answer, motions compel arbitration or dismiss the New Jersey Action.

Here, like the insurers in *Merchants*, the Plaintiff has assumed the substantive defense of the Defendants in the Underlying Actions by continuing to retain counsel.[4]  They have submitted filings, "investigated . . . prepared pleadings, and participated in pretrial proceedings," including, but not limited to filing Answers, making motions, and communicating with the courts, all on the behalf of the Defendants. *See Merchs.* 68 N.J. Super. at 256.

Plaintiff has, thus, reaffirmed its duty to defend by failing to notice termination of the Policy and by agreeing, without objection to continue making payments to retained counsel in the Underlying Actions. Because of Plaintiff's conduct, Defendants' have come to reasonably rely on Plaintiff's financing. Rescission of the Policy would immediately saddle Defendants with managing parallel litigations, on either side of the country.  Certainly, this is a detriment the principles of equitable estoppel were intended to prevent.

For these reasons and those discussed below, even if Plaintiff could state a claim for rescission, which it has not and cannot, the principles of equity estop this action.   Therefore, for this reason, Plaintiff cannot state a claim causing an inequitable outcome, and Plaintiff's Complaint should be dismissed, with prejudice.

---

[4] Plaintiff admits this fact in Paragraph 54 of the Complaint, stating that they are "presently providing a defense to all defendants in the [Underlying Actions] . . ." (Dkt. No. 1, at ¶ 54).

ii.   Plaintiff Has a Duty to Defend Until the Underlying Actions are
Resolved

An insurer has a duty to defend its insured if the claims are "within the basic

terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus.,* 292 N.J. Super.

365, 377 (App. Div. 1996).  Initially, this obligation "arise[s] when a claim is stated

in the pleading, which, if sustained, would be within the protection afforded by the

policy." *Danek v. Hommer*, 28 N.J. Super. 68, 80 (App. Div. 1953).   When claims

state facts bringing the injury within the coverage of the Policy, the insurer must

defend regardless of the insured's ultimate liability because the duty to defend

attaches based on "[t]he nature of the damage claim[ed], rather than the actual details

of the accident or the ultimate liability of the insurer [to pay a judgment entered],

determines whether the insured is obligated to defend." *See e.g., Ohio Cas. Ins. Co.

v. Flanagin,* 44 N.J. 504, 512 (1965).

Here, the Underlying Actions seek relief for conduct expressly covered under

the Policy—lawsuits arising from allegations the insured acted negligently.  Plaintiff

is thus required to continue to ". . . provide a defense until all potentially covered

claims are resolved." *Flomerfelt v. Cardiello*, 202 N.J. 432, 444 (2010).  Here, like

in *Flomerfelt*, Plaintiff's obligation to provide a defense attaches at the outset of

litigation and continues so long as at least some the allegations made against the

Defendants are potentially covered by the Policy.  *Id.* (holding that the duty "to

23

defend . . . is not dependent upon whether there is finding that the claim is covered;
instead it attached [when] . . . there are potentially covered claims.").

*Jackson Township Municipal Utilities Authority v. Hartford Accident &
Indemnity Company*, 186 N.J. Super. 156 (Law Div. 1982) provides a clear
illustration of this principle. There, the court held an insurance company was
obligated to defend an entire action, even though only a portion of the claims against
the policyholder were covered. In that case, Jackson Township was sued for the
negligent contamination of groundwater, causing, among other things, property
damage and personal injury. *Id.* Jackson Township moved for partial summary
judgment against their insurer Hartford, asserting they had a duty to defend claims
that included some of the causes of action that were explicitly covered under the
policy.

> The court agreed, and granted Jackson Township's motion, holding that the
>
> . . . . fact that there are claims against the insured alleging intentional
> and willful actions does not excuse the carriers from their duty. If the
> claims are mixed or based on conflicting theories, one which requires
> coverage and one which does not, the carrier has no choice, it must
> defend.
>
> (*Id.* at 165.).

Despite Plaintiff's admission and the clarity of the New Jersey case law,
Plaintiff baldly claims no duty to defend attaches because the claims do "not allege

negligent acts," and "its claims are [therefore] not within the coverage of the Landmark Policy."   (Dkt. No. 1, at ¶ 71).

These allegations are patently false.  The Underlying Actions have asserted, among other things, claims based upon negligent misrepresentation.   The New Jersey Action alleges Defendants made statements "without a reasonable belief they were true or accurate."   Similarly, the Plaintiffs in the California Action, have asserted the same legal theory of negligent misrepresentation against the Defendants.

Here, like in *Jackson Township*, the Underlying Actions against Defendants assert claims arising out of their allegedly negligent conduct.  *Jackson*, 186 N.J. Super. at 159.  Moreover, Plaintiff has admitted that its Policy covers negligent acts. (*See* Dkt. No., at ¶ 65) ("The Landmark Policy's Insuring Agreement I.A. affords coverage for negligent acts, errors or omissions.").  By Plaintiff's own admission, the Policy expressly covers acts that "arise out of a negligent act, error or omission." (*Id.* **Exh. B** at 4).

Thus, it is immaterial whether the negligent misrepresentation claims in the Underlying Actions (which fall squarely within the coverage provisions of a policy) are isolated and segregated as their own claims, or, as is the case in Underlying Actions, are sought in parallel, alongside multiple claims. *See Hartford Ins. Grp. v. Marson Constr. Corp.,* 186 N.J. Super. 253, 257 (App. Div. 1982) (citing *Burd v. Sussex Mutual Ins. Co.*, 56 N.J. 383 (1970); *Ohio Cas. Ins. Co.* at  504.).

For the above reasons, Plaintiff is required to defend the Underlying Actions since those actions ". . . . state[] . . . claim[s] constituting a risk [of] falling within the purview of the policy language,"... "regardless of the insured's ultimate liability . . . ." *Ohio Cas. Ins. Co.,* 44 N.J. at 512; *see also Hackensack Water Co. v. Gen. Accident, Fire & Life Assur. Corp.,* 84 N.J. Super. 479, 482-83 (App. Div. 1964); *Van Der Veen v. Bankers Indem. Ins. Co.,* 30 N.J. Super. 211, 217 (App. Div. 1954). Accordingly, and for this reason alone, the relief Plaintiff has requested cannot be granted and Count I should therefore be dismissed for failing to state a claim upon which relief can be granted.

iii.    Plaintiff Has Relinquished its Right to Disclaim the Policy

When an insurance company receives a claim about an incident that may give rise to a claim, the insurer is permitted a reasonable period to investigate whether it is covered under the terms of its policy. *See Bonnet v. Stewart,* 68 N.J. 287, 296-297 (1975); *Jones v. Cont'l Cas. Co.,* 123 N.J. Super. 353, 357 (Ch. Div. 1973). This is achieved by issuing notice to the insured through a "reservation of rights letter" or a "non-waiver agreement." (the "Disclaimer"). *Merchants,* 37 N.J. 126; *Griggs,* 88 N.J. at 367.

Disclaimers permit carriers to agree to defend claim(s) against the insured while simultaneously safeguarding the insurer's subsequent right to evaluate and/or disclaim defense of the insured's claim(s) in the event they are later discovered to

not be covered by the policy. *See e.g., Doto v. Russo*, 140 N.J. 544, 557-60 (1995). If an insurer fails to reserve its rights to disclaim, New Jersey courts, as described above, will estop subsequent assertions by the carrier that they have no duty to defend or indemnify.

Disclaimers are only enforceable if they are issued to the insured in a timely manner. *Griggs*, 88 N.J. at 352. The "[a]ssumption of complete control of the insured's defense . . . is considered a substantial deprivation and should be timely relinquished when the asserted right of the insurer to avoid liability accrues." *Merchant*, 68 N.J. Super. at 254. ("[O]nce an insurer has had a reasonable opportunity to investigate or has learned of ground for questioning coverage, [the carrier] is under a duty [to] promptly [] inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned.")  The Disclaimer must also fairly appraise the insured of the insurer's position on coverage at the time the notice is sent, including setting out all of the reasons of which it is aware, or should be aware as to why coverage might be disclaimed. *Battista v. W. World Ins. Co., Inc.*, 227 N.J. Super. 135, 138 (1988).[5]

In the instant case, the Underlying Actions have been active and pending. Here, as was the case in *Merchants,* "the defense activities both before and after the

---

[5] Plaintiff's Reservation of Rights (Disclaimer) does not satisfy the requirements under New Jersey law—the specifics of which are beyond the scope of the facts set forth herein.

commencement of the declaratory action put the insurer in the conflicting role of both protecting and oppressing the insured, the latter having been placed in the intolerable position of having to cooperate with the insurer under the terms of the policy . . . while at the same time anticipating the possible loss of coverage under the policy." *Merchants*, 68 N.J. Super. 235 (1961). The "[p]rejudice . . . unreasonable delay in communication of disclaimer [while] presumed" would be prejudicial in fact. *Id.* Disclaimer after covering costs of litigation for nearly one year would place Defendants' active cases in jeopardy given the challenges simultaneously defending two separate lawsuits, with one in New Jersey and one in California.

For this reason, New Jersey law requires, should "a carrier wish[] to control the defense and simultaneously reserve a right to dispute liability, it can do so only with the consent of the insured." *Merchant*, 37 N.J. at 127-28. Disclaimer "requires the consent of the insured, as he gives up valuable rights in respect of control [over] the investigation, negotiations for settlement as well as the defense of any action instituted by the claimant." *Id.*

This rule has rendered unilateral declarations of an insurer's rights which do not disclose the insured's choice to reject the Disclaimer, unenforceable in New Jersey. In this case, Plaintiff has not pled the facts necessary to prove it sufficiently noticed Defendants of the possible Disclaimer of the Policy. *See Sneed v. Concord Insurance Co.,* 98 N.J. Super. 306 (App. Div. 1967).

28

In *Sneed*, the insurer was estopped from disclaiming coverage for an automobile accident after the insurance company settled part of the claim. *See Id.* The court held the insurer's Disclaimer was deficient because the "letter contained no language apprising the policyholders that they were at liberty to accept or reject the company's plan of procedure." *Id.* at 311. Here, Plaintiff alleges it "is presently providing a defense to all [D]efendants in the [Underlying Actions], *subject to* a full reservation of rights to disclaim coverage upon further investigation, and/or *subject to* a determination in this action of [Plaintiff's] claim for fraud and rescission." (Dkt. No. 1, at ¶ 57) (emphasis added.)  Like in *Sneed*, this was "not an offer at all" but was an Admission that Plaintiff simply made "a unilateral declaration of its intention to control the investigation and impliedly, the entire handling of the claim while reserving the right to disclaim whenever they saw fit to do so." *Sneed*, 98 N.J. Super. at 314.

Providing a defense to Defendants, "subject" only to Plaintiff's nearly year-long "investigation" and unilateral "determination" is entirely one-sided. Moreover, Plaintiff's Complaint fails to allege it issued any Disclaimer notice whatsoever to Defendants, nor does the Complaint state a basis for how Plaintiff is permitted to disclaim coverage for negligence claims, which, as Plaintiffs admit, falls under the terms of the Policy.

Plaintiff has not reserved its right to bring the instant action to disclaim the Policy in accordance with New Jersey law. Plaintiff's Complaint fails to plead any facts that suggest Disclaimer notice was issued to Defendants. Plaintiff has admitted purported reservation of rights was unconditional by alleging its defense of Defendants was "subject" to termination at any moment. For these reasons, Plaintiff has waived its rights and, therefore, this action should be dismissed, with prejudice.

## IV.   CONCLUSION

For the reasons set forth here, Defendants respectfully request the Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,
**EPSTEIN OSTROVE LLC**

By:   ELLIOT D. OSTROVE

Dated:      May 11, 2018

30